MORGAN'S ASSIGNEES *v.* SHINN.

1. A bill of sale of a vessel, absolute in its terms, may be shown by parol evidence to be only a mortgage.
2. The facts that the bill of sale was recorded; that the vessel was re-enrolled in the name of the transferee; that a policy of insurance was taken out in his name as owner, and that no note or bond was taken by him, will not overcome positive evidence that the bill was taken as a mere security for a loan.
3. A mortgagee of an interest in a vessel, not in his possession, is under no obligation to contribute for repairs which he did not order. The ship's agents are not his agents, and they act under no authority from him. And it makes no difference though the vessel be registered in his name.

APPEAL from the Supreme Court of the District of Columbia; the case being thus:

The assignees of Morgan, Rhinehart & Co. filed a bill in the court below against one Shinn, to enforce contribution to the repayment of advances made by their assignors for

the repairs and expenses of a steamer called the Fairfax; the bill averring that Shinn was owner of one-fourth part of the vessel, and Shinn by his answer denying this averment of his ownership, and asserting a mere interest as mortgagee. The question of fact, and one preliminary to any other question, therefore, was, whether Shinn was in fact such a part owner? The evidence on the two sides of the case seemed thus:

1st. *Evidence to support the allegation of ownership.*

In September, 1855, Morgan, along with three other persons, named Comstock, Savage, and Kelly (Kelly being a resident of Philadelphia), became joint owners of the vessel by purchase from the government, and she was re-enrolled in their names as joint owners, on or about the 10th of October of that year, and made one of a line running between New York and Washington, called the "Atlantic Steamship Company." The shares of Morgan and of Comstock were held for the benefit of Morgan, Rhinehart & Co., a firm composed of Morgan, Comstock, and one Rhinehart. The firm was also the ship's husband, and as such they made advances for repairs and expenses.

On the 2d of October, 1865, Kelly made a bill of sale of one-fourth of the vessel to Shinn; and the bill, at the instance of Shinn, was forthwith recorded. On the 23d of October, the vessel was re-enrolled, Morgan now swearing that Shinn was owner of one-fourth of her. And on the 15th of February, 1866, Comstock having insured the vessel in his own name "for the benefit of all concerned," and the vessel having been destroyed by fire, Shinn, along with Morgan and Savage, signing themselves the three "owners of one-fourth each of the steamer Fairfax," ratified his act.

Of course, if unexplained, these facts would have been sufficient to prove the allegation of ownership. But there was—

2d. *Evidence to disprove the allegation.*

It was asserted in the answer that the bill of sale, though absolute in its terms, was in fact a mortgage given to secure

Shinn for a sum of money agreed to be lent by him to Kelly. Such was the positive testimony of Shinn himself. The scrivener, also, who prepared the instrument, testified that on or about the day of date of the bill of sale, both parties to it called at his office; that they stated Kelly wished to purchase an interest in a steamer, and that Shinn was willing to advance the necessary money. Some conversation then occurred respecting the security which should be taken by Shinn, and it was suggested by one of the parties that a regular bill of sale should be given to him by Kelly. The bill was accordingly prepared, together with a power of attorney from Kelly to Shinn, empowering him to receive all money due or that might become due to Kelly in the District of Columbia, and to attend to all matters in which Kelly might have an interest or concern. The amount of the consideration was left blank in the bill, for it was not then known how much might be required to be advanced. Shinn took no note from Kelly for the money advanced; though when the amount needed was ascertained, having paid it to Morgan, who was acting in the matter for Kelly, Shinn took Morgan's receipt as for money paid to Kelly.

But, admitting that Shinn might in fact have been but a mortgagee, there remained another question of fact. Did Morgan, Rhinehart & Co., when they advanced money for the vessel, *know* that Kelly was really the owner, and that Shinn was not? And if they did not so know, then had Shinn in any manner held himself out as owner, or authorized the advances, or had they been made on his credit?

Bearing on these points Morgan, one of the firm, testified that when Shinn paid the money he said "it was money advanced by him for Kelly to pay Kelly's share of the ship." Certain letters of Morgan and of Comstock to Kelly were produced, written in November, 1865, and in the spring of 1866, in which they both wrote to Kelly as owners with them of the vessel. One from Comstock to Kelly, dated November 7th, 1865, says:

"The steamer Fairfax is doing wonders, taking everything into consideration. She is called the flag-ship of the line. We

are now making preparations to organize the company, and we intend putting the Fairfax in at $50,000. *Will this meet your approval?"*

One by Morgan to him, March 24th, 1866, after the vessel had been burned, says:

"I must again appeal to you to remit me all the money you can command. I need it badly. We have had to pay all of the accounts against the Fairfax as well as the other boats, and have had but very small return."

After the steamer was burned, Comstock said she was insured for $15,000, and that none of them, and *especially Kelly*, would lose anything by the disaster. He also asked Shinn to sign a paper for Kelly respecting the ship, and to act for him by virtue of his power of attorney; and what perhaps seemed even more important, Morgan afterwards made an affidavit stating in effect that Kelly was the owner of one-fourth of the vessel.

The court below dismissed the bill, and from this decree the appeal was taken.

*Messrs. J. M. Carlisle and J. D. McPherson, for the appellant:*

The court erred in dismissing the bill, whether the defendant, Shinn, was part owner or merely mortgagee.

I. The defendant was owner and not mortgagee.

1. He took an absolute bill of sale.

2. He caused it to be recorded.

3. He joined as part owner in ratifying the act of another part owner who had insured the vessel.

4. In the transaction between him and Kelly no note was given—no agreement made for interest.

II. If the defendant was mortgagee—

1. He was a mortgagee in possession; for having derived his interest from a part owner, the possession of the other part owners was his possession.*

---

* 3 Kent, 132, part 5, § 45.

2. As mortgagee in possession he was liable. "The weight of our American decisions," says Kent,[*] "has been in favor of the position that a mortgagee of a ship *out of possession* is not liable for repairs or necessáries procured on the order of the master, and not on the particular credit of *the mortgagee who was not in the receipt of the freight;* though the rule is *otherwise when the mortgagee is in possession*, and the vessel employed in his service."

Mr. Justice STRONG delivered the opinion of the court.

We think the averment of the answer that the bill of sale was intended by the parties to be only a security, is sufficiently proved. The testimony of Shinn himself is positive. It is confirmed by that of the scrivener, and the testimony of both is entirely uncontradicted. The fact that a power of attorney was given at the same time with the bill is also significant. Why empower Shinn to collect money which might become due to him in the District of Columbia, and to attend to his interests, if Kelly then parted with all his ownership in the vessel? There is no evidence that he had any other interests in the District, and he was a resident of Philadelphia. It is true the bill of sale was recorded at the instance of Shinn; but that was necessary, whether it was a security or an absolute transfer. It is true also that the vessel was re-enrolled on the 23d of October, 1865 (Morgan having sworn that Shinn was then the owner of one-quarter), but the new enrolment did not negative the fact that Shinn was only a mortgagee. So also, Shinn joined with Savage and Morgan in ratifying the act of Comstock in taking out a policy of insurance on the vessel, but that was not inconsistent with his present assertion that he held the property as a security for a debt. He took no note for the money advanced by him for Kelly. He could not have taken one when the bill was made, for it was then not known how much he might be required to advance. But

---

[*] 3 Kent, 134, part 5, § 45, and numerous cases there cited; Flanders *v.* Merritt, 3 Barbour, 207.

when the money was advanced, he did take a receipt in Kelly's name. If in truth a debt was created, the fact that a bond or note was not taken does not make the bill of sale any the less a mortgage, though the absence of a bond or a note is to be considered in inquiring whether a debt was intended.* Nothing in all this, we think, overcomes the positive evidence that the arrangement was a loan rather than a purchase, and that the bill of sale was intended only as a hypothecation to secure the loan.

It is not questioned that an instrument absolute in its terms may be shown by parol evidence to be only a mortgage.† It is true that if trust and confidence have been reposed in it by third parties, with the honest belief that it was indefeasible, and such parties have been misled by its form, they have a right to insist that, as to them, it shall be what upon its face it purports to be. But there is not even an allegation in this case that Morgan, Rhinehart & Co. were misled. Much less is there any proof that Shinn held himself out to them as owner, or that he authorized the advances, or that they were made on his credit. On the contrary, the evidence, so far as it goes, tends strongly to show that the firm knew the real nature of the transaction, and that they believed Kelly remained an owner notwithstanding the bill of sale. There can, indeed, be no pretence that Morgan, Rhinehart & Co., did not know from the beginning that the bill of sale was a mere security for money advanced by Shinn.

If then Shinn was only a mortgagee of an undivided interest in the vessel, as we think he was, he is under no obligation to contribute for repairs which he did not order. A mortgagee out of possession is not liable for repairs.‡ The benefit of repairs enures primarily to the mortgagor. A mortgagee out of possession does not appoint the master, or the ship's agents. They do not act under authority from

---

* Hoyer *v.* Savington, 1 Peere Williams, 268; Russell *v.* Southard, 12 Howard, 139.

† Babcock *v.* Wyman, 19 Howard, 289.

‡ 1 Parsons on Shipping and Admiralty, 129, and cases collected in note 1.

him, and he is not entitled to the freight earned. Nor does it make any difference though the vessel be registered in his name.*

It certainly cannot be maintained that Shinn was in possession, or that he ever authorized the expenditure that was made. And as this is a bill, not by third parties who furnished the supplies, but in right of some joint owners, the ship's husband, against a mortgagee of another joint owner, authority from the mortgagee to contract for the supplies is indispensable to any liability on his part.

　　　　　　　　　　　　　　DECREE AFFIRMED.

---

* Howard *v.* Odell, 1 Allen, 85; Myers *v.* Willis, 17 C. B. 77; 18 Id. 886.