## MURPHY v. CHARLTON.

1. MORTGAGES—EVIDENCE.

Complainant and his brothers comprised a corporation which owned certain boats, worth approximately $30,000, that had been libeled and were about to be sold. One of the brothers arranged with K. to advance $10,000 to bid in the boats, under an agreement that he should hold the title to the boats as security for a time, during which such brother was to retain possession; in consideration of which service K. was to receive, upon redemption of the boats, $11,000. K. bid in one of the boats for $13,050, and received a bill of sale of the other from the corporation. It was known to K. that the money to redeem the boats, over and above the $10,000 paid by him, was furnished by complainant. *Held,* that the transaction amounted to a conveyance to K. in trust for complainant, with an interest in K. in the nature of a mortgage interest.

2. SAME—PURCHASER WITH NOTICE.

A sale by K. to defendant, negotiated by the brother in possession, who received nothing therefor, entitled defendant merely to hold in the right of K., subject to complainant's equities; at least if, in subsequent negotiations, the fact that complainant had equities in the boats was recognized by defendant.

Appeal from Wayne; Lillibridge, J. Submitted June 7, 1898. Decided September 20, 1898.

Bill to redeem by William J. Murphy against John Charlton and others. From a decree dismissing the bill, complainant appeals. Reversed.

*Moore & Moore,* for complainant.

*John C. Shaw* and *William B. Cady,* for defendants.

MONTGOMERY, J. In February, 1886, the Detroit Tug & Transit Company was the owner of the tug Balize and the schooner Harvey Bissell. Both of these boats

had been libeled in the United States district court at Detroit. The claims against the Balize aggregated $13,-050. The specific amount of the claims against the Bissell does not appear. At this time, Samuel A. Murphy and William J. Murphy and Thomas Murphy owned nearly all the stock of the Detroit Tug & Transit Company, and were the ones chiefly, if not solely, interested in preventing a sale of the boats. At this time they sought one John Kelderhouse, of Buffalo, N. Y., to aid them in securing to themselves the two boats in question. An arrangement was then made by which Kelderhouse, through an agent, bid in the Balize at a marshal's sale, and thereupon the Tug & Transit Company made a bill of sale to Kelderhouse of the Bissell; so that he became at least nominal owner of both boats. At the sale of the Balize, complainant furnished $3,050 of the purchase money, and Kelderhouse $10,000. Complainant also furnished the money to pay off the claims against the Bissell. The boats went into the possession of Samuel A. Murphy, and continued in his possession until September following, when they were conveyed by a bill of sale to William T. M. Charlton, in trust for the other defendants. The Charltons took possession of the boats, and have since controlled the same.

The bill in this case is filed, alleging, in substance, that complainant, intending to become the purchaser of the two boats in question, applied to Kelderhouse for a loan, and that he effected the loan, and that the transfer to Kelderhouse was in trust for the complainant, and as security for the advance of $10,000, and by way of mortgage; that the Charltons took simply the interest that Kelderhouse had; and that the right to redeem from the mortgage continues. The bill also prays for an accounting. The answer denies that the transaction with Kelderhouse amounted to a mortgage, but avers that the agreement was between Samuel A. Murphy and Kelderhouse, and that the advance of $10,000 was not made as a loan, but as the purchase price of the property, and that the agree-

ment with Murphy was a conditional agreement to sell, and that by this agreement Murphy was not bound to buy, or to repay the $10,000. The answer also alleges that the purchase of the boats from Kelderhouse was absolute and unconditional, and with the consent of Samuel A. Murphy. There seems to be no controversy between the shareholders of the Detroit Tug & Transit Company and the complainant. The circuit judge dismissed the bill, and complainant appeals.

The two questions arising are:

(1) Whether the transaction between Murphy and Kelderhouse amounted to a mortgage, giving to Murphy a right to redeem.

(2) Whether, if the transaction gave to Murphy the rights of a mortgagor, this right has been cut off by the sale to the Charltons.

1. Some stress is laid by defendants' counsel upon the fact that it does not appear clearly that, in the negotiations with Kelderhouse, complainant was named as principal. This circumstance is entitled to this much weight, viz.: The acts of Samuel A. Murphy on behalf of his undisclosed principal, in his (Samuel A.'s) own name, would bind the principal; but, as bearing upon the question of the nature of the contract, it is not of great importance, as we view it. It was known to Kelderhouse that the money to release the boats, over and above the $10,000 paid by him, was furnished by complainant. What was the nature of the transaction? The complainant labors under a difficulty in proving his case, arising from the fact that Samuel A. Murphy, who conducted the negotiations, has since become insane. Mr. Kelderhouse is, however, apparently a candid witness, and a solution of the question depends very much upon an analysis of his testimony. A careful review of his testimony convinces us that the complainant's contention is fully sustained thereby. He testified:

"I was to hold the boats, take a bill of sale of them and hold them as security, for, my impression is, four months; it might have been six months, but not to exceed

that; and he was to give me for the trouble $1,000, and I was to have, when they were redeemed, when I got my pay, I was to have $11,000, and I was to let him run the boats up to that time, providing he kept them out of debt."

He also testified that Murphy applied to him for a loan, and on cross-examination, in answer to the question, "He was to pay you $11,000 when the loan matured?" he answered, "Yes."

We cannot escape the conclusion that both parties understood that this was a loan, and that Mr. Samuel A. Murphy understood that his principal was obligated to pay the amount, and that, if Mr. Kelderhouse did not know of the fact that Mr. Samuel A. was acting for the complainant, he might have had recourse against Samuel A. or the complainant whenever he discovered that he was the principal. We think this transaction amounted to a conveyance to Kelderhouse in trust in favor of complainant, with an interest in Kelderhouse in the nature of a mortgage interest. See *Jarvis* v. *Woodruff*, 22 Conn. 548; *Horn* v. *Keteltas*, 46 N. Y. 605; *Reed* v. *Bond*, 96 Mich. 134, and cases cited; *Morgan's Assignees* v. *Shinn*, 15 Wall. 105.

2. The question whether the purchase by the Charltons was absolute or made subject to complainant's equities is more doubtful. The defendants claim that their purchase was absolute and final, and they so testify; but there are circumstances which, as the case presents itself to us, cannot be reconciled with this claim. Mr. Kelderhouse testified that, when his claim fell due, he insisted on payment; that Samuel A. Murphy said he would look around, and see what he could do; and that later he returned, and said: "I want you to make the bill of sale out to Charlton Brothers on the boats, and they will pay you for them." The question occurs at once, Why should Samuel A. exhibit the anxiety to place these vessels beyond redemption? Admittedly, the Murphys were paid nothing for any release, and yet, according to the claim of the

Charltons, Samuel A. was looking for a customer for
Kelderhouse to sell to, and to cut off their claim. This
spirit would not have appeared so unaccountable if the
indebtedness to Kelderhouse equaled the value of the ves-
sels, or nearly equaled it; but it did not. The two vessels
were worth $25,000 to $30,000 at the least, and the total
claim against them was less than $17,000. It further
.appears that in subsequent negotiations the Charltons
recognized the fact that the complainant had equities in
the boats. We cannot escape the conclusion that, what-
ever the form of the transaction or the language employed,
the Charltons were induced by Samuel A. Murphy to in-
vest, and they expected to take the place which Kelder-
house previously occupied, and succeed to his rights.

The complainant was entitled to relief. The decree will
be reversed, and the case remanded for an accounting.
Complainant will recover costs of this court. The costs
of the court below will abide the result.

The other Justices concurred.