## AMERICAN COLONIAL BANK

*v.*

## MARÍA DE LAS NIEVES CABRERA ET AL.

---

### San Juan, Equity, No. 142.

1. A special or silent partner of a firm that borrows money, and who gave individual security for said loan, is a debtor as much as the general partners.
2. A writing, although in the form of a public instrument, intended as additional security, but which is not such in terms, can be explained in equity as between the original parties and others not bona fide holders for value.
3. Equity will look to the substance of a transaction rather than to its form, and the court will hear testimony to determine the true intention of the parties in executing a notarial instrument.

Opinion filed May 3, 1907.

---

*N. B. K. Pettingill, Esq.,* solicitor for plaintiff.

*Francis H. Dexter, Esq.,* solicitor for defendants.

RODEY, Judge, delivered the following opinion:

This is an ordinary bill in equity, brought to foreclose a

American Colonial Bank v. Cabrera.

mortgage. It was filed as long ago as December 17, 1901, and is one of the old cases which the present incumbent of the bench finds still undisposed of. The respondent Banco Territorial y Agrícola de Puerto Rico, at an early date in the controversy, disclaimed any right in the premises against complainant, and the cause thereafter proceeded against the remaining two respondents.

Many motions and exceptions which, as the court believes, were of a frivolous and useless character, were filed in the cause, and some of the same were referred to a master for taking of proofs, and for legal recommendations to the court as to the disposition thereof. At last, in the early part of the year 1905, an issue was raised, and thereafter, at two or three different times, evidence was taken before the court, the last taking being before the present incumbent of the bench, March 1, 1907. The stenographic notes of the evidence thus taken were all transcribed and filed. Thereafter, counsel for the respective parties filed briefs, and the matter is now before us for final disposition and decree.

A statement of the case is as follows: For some time—and it does not appear for how long—previous to the early part of the year 1900, a man by the name of José María Suarez carried on a mercantile, dry goods, and notion business here at San Juan, Porto Rico. Shortly before that date he died, and two of his brothers, Ramón Suarez and Manuel Suarez, together with his widow, the respondent María de las Nieves Cabrera y Pruna, continued the business under a partnership organized in the early part of 1900 under the firm name and title of "Sucesores de J. M. Suarez y Cia." His widow testified that she became a silent partner in the concern because her husband had originally bought the store with her private funds, and her

American Colonial Bank v. Cabrera.

husband or said business owed her, at his death, 8,000 pesos, and she took an interest to that extent in the conducting of the business thereafter with these two brothers-in-law of hers, but took no part in the management generally.

It seems that the concern needed money about that time, and on said 21st day of February, 1900, it borrowed from the complainant bank the sum of 8,000 pesos, equivalent to $4,800 in American money, and gave its six months 9 per cent promissory note therefor, signed by the respondent widow, María de las Nievas, by and for herself individually, and also by one of the men of the firm, for and with the firm name, "Sucesores de J. M. Suarez y Cia." At the time of borrowing this money, and in order to obtain it, and without which it could not have been obtained, and in order to secure this note, the concern gave to the complainant bank a mortgage on a house and lot in this city of San Juan, signed by the said respondent, María de las Nieves, and also a mortgage or lien upon all and every real and personal right which might belong to the said María de las Nieves as heir or legatee, or which might come to her from the estate of her deceased mother, the late Mrs. Nieves Pruna y Van Rosi, that had not yet been set off to her. This mortgage was at once recorded in the registry office. It seems also, from the phraseology of the note, which is a long and verbose instrument, that this mercantile partnership concern of Sucesores de J. M. Suarez y Cia. was to continue depositing its money thereafter with the complainant bank, and that the bank should have a lien thereon for any other incidental indebtedness the concern might owe it.

One day before the note in question became due, that is, on the 20th day of August, 1900, the said respondent María de las Nieves and the said firm of Sucesores de J. M. Suarez y

American Colonial Bank v. Cabrera.

Cia., over their own signatures, signed by each of them respectively, the widow for herself, and one of her brothers-in-law for the firm, wrote a joint letter to the bank, asking an extension of the same, a translation of which letter is as follows:

Our note for 8,000 pesos, provincial currency, in favor of your bank, falls due on the 21st of this month, and we earnestly pray you to extend that obligation not only to-day but in the future, allowing us those extensions for periods of six months, with interest. At the same time we promise to make payments after the second extension, until the amount shall be paid up. In the assurance that this favor will be granted, and awaiting your courteous reply, we remain

Yours respectfully,

(Sgd.) Nieves C. V. de Suarez,

(Sgd.) Suc. de J. M. Suarez y Cia.

It seems that the extension thus requested was not formally granted, but the matter was permitted to drag along as it stood.

It further appears that, along in the early part of the year 1901, this business concern became, or perhaps had been for some time, embarrassed, and they went to the complainant bank and talked with its Mr. Arnold, with whom they had done business, and told him they were liable to be attached out of existence in a short time by some insistent creditors, and begged him to aid them in some way to keep on as a "going" concern with a view to paying their debts, including this bank. They suggested the execution of some sort of instrument in the nature of a chattel mortgage, as understood by Arnold, in favor of the bank, of the whole or a portion of their stock of goods; he sent them to his lawyers, Messrs. Pettingill & Keedy, with a view

III. Porto Rico—2.

to having such an instrument prepared. The lawyers sent one of their law clerks with these Messrs. Suarez to a notary by the name of Palmer, which official only, it appears, under the law, could draw such an instrument, and who was accustomed to doing such work for the bank. The latter informed them that no such instrument as a chattel mortgage was then known to the laws of Porto Rico, and suggested, instead, the making of a bill of sale outright of the goods to the bank, and that the firm could remain in possession and continue the management and make payments as they saw fit. An instrument of that kind, under date of March 13, 1901, to carry out that intention, was then prepared by the notary and afterwards executed by the parties,—the said Messrs. Suarez acting for the mercantile society, Suc. de J. M. Suarez y Cia., and the said Edwin L. Arnold acting for the bank.

Mr. Arnold, the cashier of the bank, states in substance that when this instrument was prepared, in 1901, his recollection is that he went to the notary's office and signed it without having much of an idea what it contained, and when on the stand during the recent hearing, he seemed to be somewhat surprised at its exact phraseology, when some of it was read to him. He said in connection with it, that when he signed it he had no idea of giving up the mortgage security which the bank held as security for its debt, and on the strength of which the loan was made, and that the firm just asked him to take their stock as additional security, for the purpose of protecting them against action of other creditors, which would close up the business and prevent the bank from collecting its claim against them, and prevent them from going on with their affairs. That he did not request the instrument, and took little or no interest in it. That he had consulted his lawyers when the firm pro-

American Colonial Bank v. Cabrerà.

posed it to him, and asked his lawyers to arrange the matter in such a way as not to affect the original loan or its security, and that written instructions were given to the notary that no change should be made in the status of the original loan or its security, and that when the chattel mortgage was proposed, the notary said no such instrument was known in Porto Rico, but that he could arrange a document in which the security would be all right. That there was no agreement or understanding of any kind or character whatsoever between the parties that the making of this instrument should be considered as full payment of the main loan or debt. That he never saw their stock of goods or any part of it or went to their store. That they remained in possession of it. That he had never taken a chattel mortgage on a stock of goods in his life, and didn't know anything about such proceedings. That he took it merely at their request, to protect them and keep them going, and that he surely would not have signed a document to release a note and take a stock of goods as a substitute for a real estate mortgage which he already had, and on the strength of which only the bank made the loan. That if he did such a thing he would expect to lose his job the next minute.

This bill of sale of this stock of goods is made by this concern, Sucesores de J. M. Suarez y Cia., as an entity, and not by the two men partners, for themselves alone, to Mr. Arnold himself, but the wording of it shows that it is intended to be to, or for the benefit of, the complainant bank.

Both of these remaining women respondents, by their counsel, now insist that this instrument amounts to a complete payment and release of the mortgage which this suit is brought to foreclose. We think therefore it is best to here set out a translation of its salient parts, and we do so as follows:

"Appear as party of the first part, The Mercantile Society, Limited, doing business under the firm name and style of Sucesores de J. M. Suarez y Cia., owner of the establishment the "Bazar Europa" at number 38 Fortaleza street of this city, represented by its managing and active partners, Don Manuel and Ramón Suarez y Cordero, of lawful age, bachelors, merchants, and residents of this city, as it appears from the deed under which the said society was formed, under date of February 6th, 1900, executed before the notary Mauricio Guerra Mondrajon y Mejías, recorded on page 138 of volume 13, relative to partnerships, page number 878, registration first. And as party of the second part, Mr. Edwin L. Arnold, of lawful age, married, and cashier of the American Colonial Bank of Porto Rico, and resident of this city; having in my judgment the legal capacity necessary, without any limitation whatsoever, to execute this deed of sale of dry goods, and state:

"First: The society Sucesores de J. M. Suarez y Cia. now is debtor to the American Colonial Bank of Porto Rico, in the sum of $4,800, due on the 21st of August last, according to the promissory note which they executed, and, not being able to deliver the amount thereof, have offered to make payment thereof in mercantile stock, according to the detailed inventory which they exhibit, subscribed by the society, and which they take with them bearing my signature and seal, and to which the creditor bank has manifested its conformity.

"Second: That carrying into effect the sale of the goods set forth in the inventory exhibited, Messrs. Suarez y Cordero, in the representation in which they act, transfer all of the said effects set forth in the said inventory to the creditor bank for the sum of $4,800, leaving the same in the possession of the

bank, in payment of the said amount of the promissory note above mentioned.

"Third: Mr. Edwin L. Arnold accepts this deed, receives the inventory above mentioned, and, in consequence thereof, says that he leaves in the said establishment of the sellers, the 'Bazar Europa,' all the stock and goods which such persons have sold to him, in payment of the $4,800 which they owe to the American Colonial Bank, in order that, for the account and commission of the latter, they may proceed to realize from the said goods, prices not to be less than those fixed in the inventory, and they are obliged to present to the bank weekly· accounts of the sales they may make, together with the value in cash thereof, until the complete realization of the same takes place. It is so executed by Messrs. Manuel and Ramón Suarez y Cordero and Mr. Edwin L. Arnold, before me and in the presence of the witnesses, Don Joaquin M. Torres and Don Geronimo Carreras."

It may be well to note here that this bill of sale does not appear to have ever been recorded in the local registry office, or that any possession of the stock of goods mentioned in it was ever personally delivered to, or taken under it by, the bank, unless the terms of the instrument itself constructively amount to such delivery and possession. Neither does it appear in evidence anywhere that anybody ever knew about this bill of sale, except the parties themselves, the immediate witnesses, and the notary, or that any person was ever deceived by it in any manner, or extended credit to, or refrained from enforcing their claims against, the mercantile firm on account of it, or that anyone in fact lost any money because of it. But the fact does appear that the entire stock of the concern shortly thereafter went into the hands of their trustee in the bankruptcy

proceedings which settled up their estate, and was used to pay their entire creditors *pro rata,* this complainant refraining from proving any claim against the bankrupt estate, apparently relying entirely upon the security of its mortgage.

It does appear, however, that this mercantile concern continued to do business for several months thereafter, and during that time made small weekly payments into the bank, which, on account of their smallness, were kept in a separate account to the credit of Mr. Arnold himself, as trustee, or some such designated capacity, and against which, small amounts due the bank from the concern were from time to time charged. It appears that, in all, there was paid into the bank in this manner about $1,500, which, less the charge against it, left a credit of $760 against the note of the main loan. It also appears that the interest on the principal note had been paid up to the date it was due, August 1, 1900.

It will be remembered that the mortgage given to secure the note was executed on the 21st day of February, 1900, and that it covered a house and lot in the city of San Juan and whatever interest the said respondent María de las Nieves might then or thereafter be entitled to in the estate of her deceased mother, and we find from an exhibit introduced (C for complainant) and from the proofs, that a few months thereafter, on July 15th, a voluntary partition of the mother's estate was had between the heirs, and certain interests, as in the exhibit set forth, in certain houses described therein, situated in said city of San Juan, were set apart to the respondent María de las Nieves in her own right, the entire appraisement of which interests was at that date fixed at $5,769.84.

But it transpires that notwithstanding the said respondent María de las Nieves had written the bank on August 20, 1900,—

American Colonial Bank v. Cabrera.

one day before the said 8,000-peso note was due,— asking for an extension of it, that she, on the 21st day of March, 1901, something over six months thereafter, and just one day before the making of this bill of sale of the stock of goods by the firm of Sucesores de J. M. Suarez y Cia., of which she herself was a member, she transferred, or attempted to transfer, all her right in and to the house and lot mentioned in the original mortgage and all her right and interest in and to the interests last aforesaid which she acquired in her mother's estate, to her sister, Magdalena de la Cruz, and this is why it became necessary for complainant to make the latter a party respondent to the bill, which alleges that the said Magdalena took the same with full knowledge of all the rights of the complainant, and without paying any consideration therefor.

It appears from the evidence that a Mr. Todd, who was a law student in the office of Messrs. Pettingill & Keedy, attorneys for the complainant bank at the time, went to the house where these two lady respondents lived, with a letter from the firm regarding the debt, which was intended to remind them—or at least the said María—of the lien of this mortgage upon all of this property, including that received from the mother's estate, and in his testimony, Mr. Todd says he saw and talked to both of them, and that the said Magdalena told him she had not yet consummated the trade. It is manifest that this statement was true, because, under date of March 11, 1901, two days before the date of the transfer to her, the said Magdalena wrote a letter to Messrs. Pettingill & Keedy in answer to the letter their law clerk had thus brought her, which is exhibit D for complainant, and a translation of it is as follows:

American Colonial Bank v. Cabrera.

San Juan, Pto. Rico, March 11, 1901.

Messrs. Pettingill & Keedy,

City.

Dear Sir:—

I have received your attentive letter of the 9th instant, and I am sorry I have to say to you in reply that you have been misinformed, since the property you refer to was acquired by me on the 2d instant, free from all liens and mortgage, with the exception of the annuities (censos) mentioned in the deed of sale.

Neither the lady who sold to me nor myself had the least knowledge of the mortgage you speak of, to secure the payment of $4,800 and interest. I would mention, however, that the same day your letter was received, or the day before, we heard the rumor that those liens and obligations that you mentioned existed, but they cannot in any way affect me, the more so since there is no record in the registry office, where I sent for information.

Both by what you have written to me and by what has been said to me by the lady from whom I purchased, I can see that not only she but you have been made the victim of deceit, to which I am not a party at all. However, as far as it lies within my power, and without prejudice to my rights, I am willing to facilitate you in the exercise of your own rights, as well as those of the seller; I mean the rights and interests of the American Colonial Bank, which you represent.

I am, sirs,

Yours respectfully,

(Signed) Magdalena Cabrera.

From an examination of the original mortgage we find that it was recorded on March 15, 1900, and therefore the statement

of the said Magdalena in her aforesaid letter, that there was no record in the registry office of said mortgage, is manifestly a misstatement of the fact; but independent of that we feel that it has been duly proved, and we so find, that she took all of the said property and the interests therein from her said sister, probably without any consideration, and, in any event, she took it with full knowledge of, and subject to the right of, this complainant.

Counsel for respondents made many statements as to the large value of the stock of goods mentioned in the said bill of sale, and made several statements in the record as to the negligence of the complainant bank in not following it up, and realizing upon it, all of which resulted, as he states, in the great injury and damage of his clients, etc. In this behalf it must not be forgotten that the possession of the stock or part of the stock of goods mentioned in the bill of sale was as much the possession of the said María de las Nieves as of the other partners, and it was as much her duty as theirs to realize from it and pay the debt. Her counsel introduced in evidence the entire record in the bankruptcy proceedings, which is a very large one, of the said firm of Sucesores de J. M. Suarez y Cia., from the files of this court, and we have gone to considerable trouble going through the same from beginning to end, and find that the said firm of which the said María de las Nieves was a member, although she was only a limited or special partner therein under its articles, filed its voluntary petition in bankruptcy on December 31, 1901, in this court, but because of her being such limited partner the petition itself sets out that she did not join therein; but it appears from one of the schedules that she or the estate of her husband was, at the time, indebted to said firm in the sum of $7,669.44. So, either individually or through

being heir of her husband, she must have, in some manner, gained benefit from the concern. It appears from the schedules that the property which was put in that bill of sale to the bank was valued only at $1,500, but whether this $1,500 was its value as then left in the store, or the value that it had in the first place, before these little payments into the bank, as above stated, were made, is not certain under the evidence; and the best information we can get from the record leads us to believe that the goods described in said bill of sale were but a small fraction of the entire stock of the concern at the date the instrument was made. At any rate, every bit of it, as thus left over, went to the trustee to pay the general creditors, the bank not proving any claim whatsoever against the bankruptcy estate. In fact, this so-called bill of sale appears to have been abandoned from the time it was executed, and no attention appears to have been paid to it throughout by anybody, until it was invoked as a defense in this suit.

The schedules in these bankruptcy proceedings show that this mercantile concern, in which the said María de las Nieves was a special partner, had been hopelessly insolvent probably long before the original loan was made, and its liabilities at the time of the failure were more than $25,000, four fifths of which was actually proved up, but the assets were of such a worthless character and so much of the liabilities were preferred claims for taxes, rent, etc., as that, when the whole estate was liquidated and sold out under due process of bankruptcy law, it realized only about $1,800, and netted to the entire creditors only $330. The failure was apparently a gross and unmitigated fraud from beginning to end.

An examination of the pleadings in the case at bar shows that several untrue and untenable defenses to this bill were at first

American Colonial Bank v. Cabrera.

attempted to be set up by each of these women respondents, all of which, save that sufficient to raise the present issues, were stricken out on exceptions being filed thereto and after elaborate hearings were had in the premises.

Counsel for said respondents confidently and vehemently insists that equity and good conscience require this court to hold that the said note and mortgage are paid and canceled, and intimates that the complainant bank is not coming into court with clean hands, and for such reason deserves no consideration at the hands of a chancellor.

Whilst we are not commending the business acumen of a cashier of a bank who will so carelessly sign such an instrument as this so-called bill of sale appears to be, still it appears that there was nothing in the laws of Porto Rico at the time to prevent a preference of creditors, if made more than four months before the actual filing of a petition in bankruptcy, and when we consider the equities of the case and balance them, we find that this respondent María de las Nieves was the cause of the loan being made. That the bank refused to make any loans save on security such as she, as a member of the firm, finally then offered, and we think it cannot be questioned that at that time she had, or ought to have had, complete knowledge of the embarrassed and insolvent condition of the firm of which she was then a member, and that, as her partners had a right to make said so-called bill of sale for the firm, she was bound by it, and probably in truth and in fact had full knowledge of it, for she had previously written the bank for an extension of the loan; at any rate, she ought not now to be permitted, under all the circumstances, to deny liability, but should be held to be estopped in that regard. She, through her firm, received her share of the borrowed money and the benefit of every dollar

that came out of the goods mentioned in said so-called bill of sale, if any did so come, that was received by the complainant bank, and there are $760 still there, to be credited against the debt. In like manner, the balance of the goods went to pay the firm's debts, of which she was a member. Some of the un-sworn pleadings on her part attempt to show that these broth-ers-in-law of hers deceived her concerning these matters; but. even if this were true, which we are not deciding, we do not. think that is any defense here. She was a joint maker of the note and a joint borrower of this money. She has not been misled or injured by this so-called bill of sale transaction, but in fact has been benefited, as it certainly contributed to reduce the debt against the security of which she happens to be the sole owner, and it would, in our opinion, be unconscionable to permit her to now deny her liability. The bank never aided her partners in deceiving or defrauding her, if they did so deceive or defraud her. The long delay in enforcing this matter is. wholly due to her own persistent and dilatory pleading.

If this woman María de las Nieves were a mere outsider, or a mere surety in the ordinary sense, she would be entitled to more consideration; but, for all that appears, she may have benefited as much as anybody else from the money borrowed in the first place.

As to the other respondent, Magdalena, we think it has been clearly shown against her unsworn answer, that she took this property with full notice, and probably without value, and we think the sale to her was simulated and intended to prevent. complainant from subjecting the same to the payment of its debt.

Counsel for respondents has gone to considerable trouble in the preparation of a brief for our consideration, which would

have great force were this respondent María de las Nieves a mere surety or guarantor. On the contrary, she was a partner in the business, and was herself the principal borrower of the money. The bank did not owe her the legal duties which are usually due from a payee to sureties or guarantors, and for this reason all of the authorities cited to us in her behalf we hold, under the facts and circumstances of this case, to be inapplicable. It is, of course, admitted as fundamental in law that any agreement between principal debtors and a payee that is injurious to the interests of a surety will, in most cases, discharge the latter; but we cannot see in the case at bar that anything save benefit to this woman at any time resulted from this bill of sale transaction, even if it should, for the sake of argument, be admitted that she was, to any extent, a surety in the true sense.

The rule against varying the terms of a written instrument by parol has, we think, no proper application to this case, because it has been fully proved that the facts concerning this so-called bill of sale were as above set out. In fact, these defendants do not claim or contend that the debt has been paid. They only insist that technically, in law, because of the wording of this bill of sale, the lien as to the mortgaged property has been avoided, and that they have been released. It is well known that in a suit in equity, often a receipt in full for a debt can be denied by parol, and the real facts shown. There is no getting away from the fact that in this case the loan was made principally because of, and actually to, this woman.

A case which we think shows how the Supreme Court of the United States deals with facts such as appear here is that of Israel v. Gale, 174 U. S. 391, 43 L. ed. 1019, 19 Sup. Ct. Rep. 768, where a Wall street banker got one of his clerks to sign a note for him without paying the clerk anything for it,

just to use it to overdraw on the bank, and, notwithstanding that he was an officer in the bank, and that his knowledge would ordinarily be the knowledge of the bank, the court held the clerk liable for the note thus discounted, when in fact the money left the bank because of that note.

Another instructive case, although not quite the same in substance, is that of Joyce v. Auten, 179 U. S. 591, 45 L. ed. 332, 21 Sup. Ct. Rep. 227, where it was held that: "There are many authorities sustaining the proposition that a surety who signs an unconditional promise is not discharged from liability thereon by reason of any expectation, reliance, or condition, unless notice thereof be given to the promisee."

Instead of, at any time after the making of this bill of sale, notifying the bank to give up her note and cancel the mortgage, which she now claims was complete payment, the respondent María de las Nieves, on the contrary, as shown by the proofs, made an effort to dispose of the property so as to prevent complainant from foreclosing on the same for the collection of its debt. As before stated, the possession of that stock of goods was as much her possession as it was that of her partners, and it was as much her duty to realize from it and pay the money on the debt as it was of the others. How, then, would it be just to let her deny her liability for the debt?

The most that can be said for this so-called "bill of sale" is that it was given as additional security, because a chattel mortgage was prohibited under the local law, and hence, of necessity, the notary had to make the terms of the instrument absolute. That could not injure, but, on the contrary, by reducing the debt, it helped, the protesting respondent. We are therefore of opinion that this is one of the clear exceptions to the rule that oral testimony will not be received to vary the terms of a writ-

American Colonial Bank v. Cabrera.

ten contract. Some writers have well stated the proposition that to allow the form of a conveyance or other instrument to overcome the substance of the transaction would often be to in fact effect a fraud. Babcock v. Wyman, 19 How. 289, 15 L. ed. 644, and cases cited. See also Hughes v. Edwards, 9 Wheat. 489, 6 L. ed. 142, and see Peugh v. Davis, 96 U. S. 332, 24 L. ed. 775, where it is stated to be an established doctrine that a court of equity will treat a deed absolute in form, as a mortgage when it is executed for the loan of money; that the court looks beyond the terms of the instrument to the real transaction, etc. It cites many cases.

A case particularly in point because of possessing considerable analogy to the one at bar is that of Morgan v. Shinn (McLellan v. Shinn) 15 Wall. 105, 21 L. ed. 87. In that case certain part owners of a steamer called "The Fairfax" filed a bill to force Shinn, who was the record owner of the remaining interest in the ship, to contribute his part for repairs which they had expended upon the vessel. Shinn set up that although the bill of sale to him of the interest he had in the ship was absolute on its face, it was only intended as a mortgage. There was some evidence that the co-owners that were then suing Shinn really knew the whole transaction just as this María probably knew this whole transaction, and the Supreme Court of the United States held that Shinn was not liable for the repairs, as he was only in reality a mortgagee out of possession. The bill in that case was not by third parties, who furnished the supplies, and the bill here is not by creditors of the bankrupt mercantile firm. In that case it was brought for the joint owners. Here, as we see it, the joint debtor is trying to avoid liability because she and her partners induced the complainant to sign this "bill of sale," containing this alleged absolute wording,

and induced the creditor to receive some of the money from the sale of the goods in cancelation of a part of the debt. In our opinion, the equities are all with the complainant. It has proved all the material allegations of the bill. There are many situations in equity so plain that it is not necessary to cite authorities to sustain the court in taking what is unquestionably the honest and proper position, and we think this is one of them.

For these reasons we hold that complainant is entitled to foreclose its mortgage, as per its terms, for the balance due, including fees and expenses, in whatever is the proper or usual way, against the property and against the respondents, but we hold that the $760 must be credited on the note as of date August 21, 1901, and the interest calculated on the balance up to the time of this decision. Therefore a proper decree and all necessary orders in that behalf will be prepared and entered, and the cause is retained for all such necessary purposes.