## THE RUTH E. MERRILL.

### CARPENTER v. TIETJEN & LANG DRY DOCK CO.

(Circuit Court of Appeals, Second Circuit. December 6, 1922.)

No. 59.

1. Maritime liens ⊂⇒67—Default of claimant in suit in rem is admission of lien.

When the owner or person entitled to claim defaults on return day of process under a libel in rem, it is a formal admission by him of the truth of the allegations of the libel and of a lien on the vessel in libelant's favor.

2. Admiralty ⊂⇒50—Lien claimant may intervene only to assert his claim.

One claiming a lien on a libeled vessel may intervene to assert his claim under new admiralty rule 34 on giving the required security, but the mere assertion of a lien without giving security does not entitle him to contest libelant's right to a lien which is admitted by the owner and not in issue under the pleadings.

3. Maritime liens ⊂⇒14, 37—Advances made on credit of vessel to pay lien claims entitled to lien and rank of demands satisfied.

Advances made to the owner on credit of the vessel to pay claims entitled to maritime liens have the lien and rank of the demands satisfied.

4. Maritime liens ⊂⇒6—Subrogation ⊂⇒23(7)—Mortgagee not in possession may be subrogated to maritime liens discharged by him.

A mortgagee of a vessel, not in possession, is not precluded by his interest from advancing money to the owner to discharge liens incurred in foreign ports, nor from subrogation to the liens so discharged.

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by John H. Carpenter against the schooner Ruth E. Merrill, with the Tietjen & Lang Dry Dock Company as lien claimant. From the decree, libelant appeals. Reversed.

Appeal from final decree in admiralty entered in the District Court for the Eastern District of New York.

In and after July, 1920, the American schooner Merrill (home port, New York), was, according to libel, on a voyage from Norfolk, Va., to Helsingfors, and return to United States.

She was owned by a New York corporation and mortgaged to libelant Carpenter for a sum stated by him to be "more than she was worth"; Carpenter had purchased the mortgage which was originally made to the corporation that sold the vessel to the owners of 1920. He was a shareholder in the mortgagee company, but had no connection with the subsequent owners.

Before reaching the Baltic the schooner suffered disaster which compelled her to put into Hamburg and there incur expenses for "repairs, supplies and necessaries." Thence proceeding she injured her rudder and donkey boiler, became unmanageable, and was towed by salvors into a Swedish port, incurring further charges for repairs and salvage.

She seems to have discharged her outward cargo and procured one for Hull,

England, where she arrived again in distress, and became indebted in that port for "repairs, supplies, crew's wages and other necessaries."

The aggregate of the demands thus arising is alleged as about $60,000, and for this sum Carpenter asserted a lien against the schooner, because he had advanced the same to the owners, on the credit of the vessel, and it had been actually expended (or much of it) in discharging claims which were themselves maritime liens.

So far as we can discover from a very poor record, Carpenter filed the first libel, and was followed by others asserting liens either for wages, repairs, or supplies. The Tietjen & Lang Company claimed for repairs made a year before the voyage of July, 1920.

The owners made no defense to Carpenter's libel, or (semble) to any of the others. The ship was sold, but how we are not informed by the record or otherwise; it was said at bar that there was a default decree in Carpenter's case. Certainly, however, the court below entered what it called an "order of consolidation and reference," whereby a commissioner was directed "to report upon the amount due the several libelants and the claimant, and upon the priorities thereof."

Then followed a contest before the commissioner between Carpenter and the class of libelants represented by Tietjen & Lang; not as to amount or priority, but as to whether Carpenter had any cause of action, i. e. a maritime lien, without which he, of course, had no right to file his libel.

Commissioner's report advised:

(1) That Carpenter had advanced money on the credit of the owner and not on that of the ship;

(2) That the advances made were to protect his own (Carpenter's) interest in the schooner; wherefore he had no lien, and Tietjen & Lang et al. were therefore entitled to the fund, so far as it would go.

For these reasons the commissioner did not ascertain whether Carpenter's money had or had not been used to pay off maritime liens, nor indeed how much Carpenter had advanced.

Over due exception this report was confirmed and final decree entered "disallowing" Carpenter's claim as having no maritime lien, and awarding the fund in court to respondent and others; whereupon libelant appealed, assigning for error in various forms the court's refusal to recognize his asserted maritime lien.

Robert B. Knowles, of New York City (Walter F. Welch, of New York City, of counsel), for appellant.

Crowell & Rouse, of New York City (E. Curtis Rouse, of New York City, of counsel), for respondent.

Before HOUGH, MANTON, and MAYER, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). It is difficult to review a matter that went through the trial court in defiance of all procedural law.

[1] For instance, it is settled that when the owner, or person entitled to claim, defaults on the return day of process under a libel in rem. such default is a formal admission by him of the truth of the allegations of the libel, and of a lien in libelant's favor on the vessel itself. The Water Witch (C. C.) 44 Fed. 95, per Wallace, J.

[2] Of course, such default may be collusive, and for the very purpose of establishing as a lien something entitled to no privilege. If any other party interested is in a position to claim the vessel, and as claimant answer the libel, he may do so, on proving his right to claim and giving proper security. But if he desires only to assert a claim to or in the res superior to that set forth in the libel, he may intervene under

Admiralty Rule 34 (267 Fed. xv), and on giving security answer appropriately. (The difference between claimants and interveners is set forth by Brown, J., in The Two Marys [D. C.] 12 Fed. 152.)

Obviously Tietjen & Lang could not claim, but they could have intervened. This, so far as shown, they never did; but without giving any security have been permitted to act like interveners.

Again there never was a trial of Carpenter's cause of action by the court, but without any pleading in denial of the libel, with no issue framed, it was sent to a commissioner to find out how much each libelant was owed, and what was the order of priority; the report gives no facts as to what is owing by any one to Carpenter, but holds in effect that the libel ought to be dismissed because there never was a lien. Yet the final decree does not dismiss Carpenter. Result is that on an appeal which is a new trial, we take what is in the record, plus admissions at bar, and begin again.

[3] Carpenter gave ample proof that he had advanced large sums to get the Merrill out of the difficulties above referred to; also, that he procured from the owner a written agreement that what he had furnished or would furnish was advanced on the credit of the vessel.

Whether such advances plus such written agreement established a good conventional maritime lien, without evidence of the application of the advances to the extinguishment of maritime liens, is a question not necessary to decide. The William & Emmeline, 1 Blatch. & H. 66, Fed. Cas. No. 17,867. This libel goes much farther, and so did libelant's attempted proof, for the allegation is that Carpenter's money was furnished and used for paying off in foreign ports most pressing maritime liens.

That such advances ordinarily obtain the lien and rank of the demands satisfied is perfectly settled. The Dunlap, 1 Low. 350, Fed. Cas. No. 513; The Guiding Star (C. C.) 18 Fed. 263, per Matthews, J.

Of course, the lender must look to the credit of the ship; but plainly this libelant did that; there is no evidence supporting the intent attributed to him by the commissioner's first finding.

But it is argued that since the schooner was mortgaged for more than she was worth she had no credit. This is merely untrue; she had credit for maritime liens; because a mortgage is not maritime, and every maritime lien is superior to it, unless superiority is avoided by some matter of estoppel or laches.

[4] Consequently the only reason for refusing a lien to Carpenter for so much of his money as paid off good liens is that he was a mortgagee.

This, we take it, is what is meant by the commissioner's second finding—that advances were made only to protect "his own interest," i. e. Carpenter's interest as mortgagee.

This is identifying a mortgagee with the owner; for it is plain that if an owner discharges a lien, he has extinguished it; or else it is treating a mortgagee like a shareholder in a corporate owner. It is upon the line of cases relating to the last suggestion that appellees rest.

They are summed up in The Natchez (D. C.) 236 Fed. 588, where previous decisions on both sides are collated. We express no opinion

on them, because we perceive no resemblance between the relations to the thing owned of a shareholder in the corporate owner and of a mortgagee of the res.

The decisions just referred to illustrate the modern tendency toward treating a shareholder as an equitable part owner in that to which his corporation has title, but any mortgagee is a secured creditor and no more until (in the case of a ship) he takes possession and exercises dominion—when he becomes an owner pro hac vice. The Dunlap, supra; Calumet, etc., v. Equitable, etc. (D. C.) 275 Fed. 552.

It is possession and not even holding the record title that changes the mortgagee's status (Morgan v. Shinn, 15 Wall. 105, 21 L. Ed. 87), and there is not the slightest evidence that Carpenter ever took possession of the Merrill. On reason therefore the holding of a mortgage does not preclude one from doing what any stranger to the title may do in respect of liens.

As for authority, The Pauline (D. C.) 136 Fed. 815, shows a mortgagee taking possession for the purpose of paying off the crew, and then successfully asserting their lien against the ship.

It is probably true that Carpenter advanced what he did because he held a mortgage, which was in great danger of being lost in foreign parts. He prevented the equivalent of a marshal's sale abroad and enabled the ship to get home; the law protects him in so doing. To that extent he rightly acted for his own interest.

We hold that the owners having defaulted, and no proper intervention been made, Carpenter is entitled to a maritime lien for such of his moneys as extinguished maritime liens, with interest. As to priorities we express no opinion further than to point out that Tietjen's lien certainly and Kessel's probably did not arise on the same voyage as that which gave rise to the liens paid off by Carpenter.

Decree reversed and the matter referred to William Parkin, Esq., to ascertain the amount of Carpenter's lien and the order of priorities as between Carpenter and the other lienors reported below.

Mandate to issue after confirmation of report hereby ordered; appellant to recover costs of this court against Tietjen & Lang and Kessel Companies.