## THE R. C. REYNOLDS.

District Court, S. D. New York. July 5, 1927.

1. **Maritime liens** ☞61—**Suit to enforce lien for repairs on domestic vessel of New York is barred after 12 months (Ship Mortgage Act, § 30 [46 USCA § 974]; Consol. Laws N. Y. c. 33, § 83).**

Under Ship Mortgage Act 1920, § 30, subsec. S (2), being 46 USCA § 974 (Comp. St. § 8146¼ppp), providing that its provisions shall not affect existing rules of law as to laches in enforcing liens on vessels, suit to enforce a lien for repairs on a domestic vessel of New York is barred after 12 months by Consol. Laws N. Y. c. 33, § 83.

2. **Maritime liens** ☞61—**Subsequent lienholder may set up laches in enforcement of lien on vessel for repairs.**

Defense of laches in enforcement of lien on vessel for repairs may be set up by subsequent lienholder.

In Admiralty. Suit by the New Baltimore Shipbuilding & Repair Corporation against the steamer R. C. Reynolds, with the Hudson Shipbuilding & Repair Company as intervener. Libel dismissed.

Macklin, Brown, Lenahan & Speer and Richard F. Lenahan, all of New York City, for libelant.

Alexander & Ash and Edward Ash, all of New York City, for intervener.

BONDY, District Judge. In May, 1923, the libelant made repairs to the ship R. C. Reynolds. On April 21, 1925, more than a year and ten months thereafter, the libelant filed a libel against the ship for a balance due for those repairs. On March 28, 1925, the Hudson Shipbuilding & Repair Company filed a libel against the R. C. Reynolds for a balance due it for repairs to the steamer between April 4, 1924, and January 17, 1925. On May 1, 1925, the R. C. Reynolds was sold under a decree in the suit brought by the Hudson Shipbuilding & Repair Company for a sum less than sufficient to pay the two libels in full.

On May 5, 1925, a decree entered on default in this suit, in favor of libelant, was vacated, and the Hudson Shipbuilding & Repair Company was permitted to intervene and file an answer. Its answer alleges that the maritime lien of the libelant was lost by the failure of the libelant to proceed in rem to enforce its lien until more than a year after the repairs were made, and that its lien, if any, was lost by reason of the provisions of the New York state Lien Law, governing liens against domestic vessels owned in the state of New York.

[1] Before the enactment of the Merchant Marine Act of June 5, 1920 (Comp. St. § 8146¼ et seq.), one furnishing supplies, or work, labor, and material, in making repairs to a domestic vessel in the southern district of New York had no lien under the general maritime law, and such lien as existed was dependent upon the statutory law of New York, which provides that every lien for a debt shall cease at the expiration of 12 months after the debt was contracted, and that, if proceedings are instituted for the enforcement of the lien within the time limit, such lien shall continue until the termination of such proceedings. Lien Law, c. 33, § 83, of the Consolidated Laws of the state of New York.

Section 30, subsec. S. of the Merchant Marine Act, which provides for a lien on domestic vessels, expressly states that the section shall not be construed to affect the rules of law now existing in regard to laches in the enforcement of liens on vessels. (46 USCA § 974 [Comp. Stat. Ann. Supp. 1923, § 8146¼-ppp]).

In Nolte v. Hudson Nav. Co., 297 F. 758, certiorari denied, Conron Bros. & Co. v. Farmers' Loan & Trust Co., 264 U. S. 590, 44 S. Ct. 403, 68 L. Ed. 865, the Circuit Court of Appeals, Second Circuit, said that it appears that under the New York statute of limitations, relating to the enforcement of liens on boats, with certain exceptions, the lien ceased to exist at the expiration of 12 months after the debt was contracted (page 764), and that the Merchant Marine Act specifically retained the existing rules of laches, and under the rules then existing the right to enforce this lien on a domestic vessel within the jurisdiction of the Southern district of New York ceased at the end of 12 months (page 765). The court referred with approval to the statement in The Key City, 14 Wall. 653, 660 (20 L. Ed. 896): "Where the lien is to be enforced, to the detriment of a purchaser for value without notice of the lien, the defense will be held valid under shorter time, and a more rigid scrutiny of the circumstances of the delay, than when the claimant is the owner at the time the lien accrued." See, also, The Bristol (C. C.) 20 F. 800; The Lyndhurst (D. C.) 48 F. 839.

[2] It follows that the right to enforce the lien against the ship was lost 12 months after the repairs were made, and that the defense of laches can be set up by innocent third parties, and not only by the owner at the time repairs were made, as libelant contends.

The decree of the libelant, entered on default, was vacated, and the Hudson Shipbuilding & Repair Company did intervene and did set up a defense. The facts in this suit, therefore, are distinguishable from those in The Ruth E. Merrill (C. C. A.) 286 F. 355, and The Oregon (C. C. A.) 6 F.(2d) 968, in which it was held that, the owner of the ship at the time the libel was filed having defaulted in claiming or appearing and no one having intervened, the existence of the lien was admitted, and that the final decree entered on default (and not vacated) was conclusive evidence of a maritime lien. Judge Hough's statement in The Oregon, "Whether such an intervener could have successfully pleaded laches is a question not now before us," cannot be held to be an intimation that he could not do so.

The libel of the New Baltimore Shipbuilding & Repair Corporation, therefore, is dismissed without prejudice to any rights in personam it may have.