### UNITED STATES v. HOLMES.

(Circuit Court, N. D. Ohio, E. D. November 3, 1900.)

No. 6,122.

1. HOMICIDE—NEGLIGENT MANAGEMENT OF VESSEL—CONSTRUCTION OF FEDERAL STATUTE.

Rev. St. § 5344, first enacted in 1838, and revised in 1871, which subjects to prosecution for manslaughter "any captain, engineer or pilot or other person employed on any steamboat or vessel, by whose misconduct, negligence or inattention to his or their respective duties on such vessel the life of any person shall be destroyed," is not restricted in its application to vessels propelled in whole or in part by steam, as was the original statute, but the word "vessel" must be construed, in accordance with its definition given in Rev. St. § 3, as including "every description of water craft, or other artificial contrivance used, or capable of being used, as a means of transportation on water."

2. SAME—ELEMENTS OF OFFENSE—INTENT.

Under such statute the offense is complete when the misconduct, negligence, or inattention in the navigation of a vessel by one of the persons named results in the loss of human life, and an indictment thereunder need not charge a criminal intent.

On Demurrer to Indictment.

John J. Sullivan, Dist. Atty., and Robert Tucker, Asst. Dist. Atty., for the United States.

Canfield & Shay, for defendant.

DAY, Circuit Judge (orally). The demurrer to the indictment in this case raises two questions: First, whether the vessel described in the indictment is one coming within the terms of the statute; second, whether the charge is sufficient, so far as it undertakes to describe the offense as having been committed with criminal intent. The indictment, it is apparent, intends to describe a sailing vessel. No claim is made that the vessel mentioned is a steam vessel, or one using steam in whole or in part. Is such vessel within the terms of section 5344, under which this indictment is drawn? We have had a very interesting presentation and discussion, on brief and orally, of the origin and history of this section of the criminal law of the United States. There is no doubt that, when originally enacted as a statute of the United States, the purpose of the lawmakers was to prevent the constant recurrence of the serious accidents then prevailing in the navigation of the waters of the United States by vessels using steam. The citations from the messages of the president and the discussions in congress, no less than the terms of the act itself, show it to have been that situation and condition of fact which led to the original enactment of the law. It first came into the statutes of the United States by the act of July 7, 1838, which is an act entitled:

"An act to provide for the better security of the lives of passengers on board of vessels propelled in whole or in part by steam."

Section 12 of that act reads as follows:

"That every captain, engineer, pilot, or other person employed on board of any steamboat or vessel propelled in whole or in part by steam, by whose misconduct, negligence, or inattention to his or their respective duties, the life or lives of any person or persons on board said vessel may be destroyed, shall be deemed guilty of manslaughter, and, upon conviction thereof before any circuit court in the United States, shall be sentenced to confinement at hard labor for a period not more than ten years."

There is no ambiguity about that statute, either in its title or in the act itself, and a vessel which was not propelled in whole or in part by steam did not come within its terms. Thus the law stood until 1871, when, we judge by the act passed, and its numerous sections and provisions, congress undertook to codify and consolidate the many previous acts upon this subject of navigation on the waters of the United States, and passed an act "to provide for the better security of life on board of vessels propelled in whole or in part by steam, and for other purposes." Act Feb. 28, 1871. Section 57 of that act provided that:

"Any captain, engineer, or pilot, or other person employed on any steamboat or vessel, by whose misconduct, negligence, or inattention to his or their respective duties on such vessel, the life of any person shall be destroyed, or [if] in consequence of fraud, connivance, misconduct, or violation of law by any owner or inspector, or other public officer, the life of any person shall be destroyed, he or they shall be deemed guilty of manslaughter," and shall be punished, etc.

The phrase "propelled in whole or in part by steam" was omitted in the enactment of this section, and, we cannot doubt, intentionally, and certainly cannot assume that congress did not understand the

difference which this change made, when compared with the former enactment. The primary rule in the construction of statutes is that, if possible, their meaning is to be gathered from the language used, and it is never to be assumed that congress or any other legislative body did not understand exactly what they were doing when they made so important a change in the law. And we cannot escape the conclusion that, in making this change in the statute, the congress intended to extend the terms of the statute to include not only steam boats or vessels, or vessels propelled in whole or in part by steam, but any steam boat or vessel on the navigable waters of the United States. If reasons are necessary to be ascribed for this change, undoubtedly they may be found in the purpose of congress to protect human life, not only upon vessels propelled in whole or in part by steam, but upon sailing vessels as well, where misconduct, negligence, or inattention may result in the loss of life.

Now, that change having been made, we come to the revision of the statutes made in 1874, being the present Revised Statutes of the United States. That revision undertook to consolidate and codify the general laws of the United States in force on the 1st day of December, 1873, and was passed as one statute. And in the conclusion of the statutes, we find the provision (section 5595) that:

"The foregoing seventy-three titles embrace the statutes of the United States general and permanent in their nature, in force on the 1st day of December, one thousand eight hundred and seventy-three, as revised and consolidated by commissioners appointed under an act of congress, and the same shall be designated and cited, as The Revised Statutes of the United States."

The next section repeals all prior general laws on the same subjects embraced in the revision, and provides that any portion of such laws embraced in any section of this revision are repealed, and the section applicable thereto shall be in force, in lieu thereof. This revision, constituting but one legislative act, must be read together; and we find certain provisions at the beginning of the act, entitled: "Title 1. General Provisions,"—applicable to all of the sections of the Revised Statutes of the United States, and, among others, section 3, not limited to the revenue acts, or acts in reference to the treasury of the United States, but applicable to the entire revision. Here is a general provision that the word "vessel" includes every description of water craft or other artificial contrivance used, or capable of being used, as a means of transportation on water. If there is any doubt, in reading section 5344, as to the meaning of the word "vessel," as used in that section, we shall be compelled to give it the definition prescribed by the terms of the law itself. Read into this section under consideration, a "vessel," as designated in section 3, would include sailing yachts. It is not necessary to amplify so plain a definition, as it must be admitted that a sailing yacht is clearly within the definition of vessels as described in the statute; and, indeed, in the general definition of the term, and without this statutory aid, we think there can be no question that the word "vessel" would include sailing vessels as well as steam vessels and steam boats. We find, then, the act of 1871, without substantial change, carried into the revision, and

the change then effected still preserved. Taking that view of this statute, we think that, so far as that proposition is concerned, the demurrer will have to be overruled.

Now, as to the other objection,—that there is no charge in the indictment of any criminal intent on the part of the defendant in the doing of the acts with which he is charged, which, it is alleged, amounted to the misconduct and negligence denounced in the statute, and which, it is averred, resulted in the loss of certain human lives. The statute, in that respect, has been subject to construction in quite a number of courts of the United States, so far back as the case of U. S. v. Warner, 4 McLean, 463, Fed. Cas. No. 16,643, with which counsel are familiar, and another case reported from the West Virginia district, and in other cases. There is a uniform holding that in order to constitute the offense it is not necessary to charge and prove that the acts were done with criminal intent,— maliciously done,—or with the purpose to take the life of any person, but it is sufficient, within the terms of this statute, if the government charge and prove the misconduct, negligence, or inattention which results in the loss of human life. As Judge Leavitt well said in his charge to the jury in the early case in 4 McLean, 463, Fed. Cas. No. 16,643, congress has fixed the penalty, from a mere nominal sentence up to the period of 10 years of imprisonment, entirely within the discretion of the court; and it is obviously one of those statutes which find analogy in the revenue laws of the United States. Where the act is done which the statute denounces and punishes, and with the result which the statute requires, the crime is complete, and it is not necessary to aver that the misconduct, negligence, or inattention was the result of malevolent or criminal motives. In short, the offense is complete when the misconduct, negligence, or inattention in the navigation of the vessel by one of the persons named in the statute results in the loss of human life. We think that proposition to be so thoroughly established by former adjudications, both in the early decisions in this circuit and others, that it needs no lengthy discussion. We therefore hold, from an examination of the statute and the authorities cited, and in consideration of the arguments of counsel, that the demurrer upon that ground is not well taken.

No other objection has been called to our attention, and we have discovered none in examining this indictment. We are therefore constrained, holding these views, to overrule the demurrer to the indictment.