## THE BOISE PENROSE.

Circuit Court of Appeals, Second Circuit.
December 5, 1927.

No. 64.

1. **Admiralty ⬯118—Dismissal of libel in rem held not reviewable, where libelant did not appeal.**

Where libelant did not appeal, question as to dismissal of its libel in rem is not raised in appellate court, notwithstanding that case came there on trial de novo.

2. **Shipping ⬯76—Seller of tug, reserving title, held not liable for repairs, notwithstanding stipulation in sale contract for bond to secure it against liens.**

Seller of tug, reserving title, *held* not liable for repairs, though there was stipulation in contract of sale for bond to secure it against liens, since registry of title in its name does not estop it to deny that buyer was its agent.

Appeal from the District Court of the United States for the Southern District of New York.

Suit by the National Dry Dock & Repair Company, Inc., against the steam tug Boise Penrose, the United Marine Contracting Corporation, claimant, with the Meseck Towing & Transportation Company, Inc., impleaded. From a decree for libelant against the Meseck Towing & Transportation Company only (15 F.[2d] 70), the latter appeals. Reversed, and libel dismissed.

Between June 6 and June 14, 1919, the libelant, at the request of the Edward J. Barton Lighterage Company, Inc., made certain repairs upon the tug Boise Penrose, at that time in possession of the Barton Company under a contract of sale from the appellant. The purchase price of the tug was $16,000, $1,000 down, $7,000 on delivery of possession, and eight monthy installments of $1,000 each, beginning on May 1, 1919, and ending in December. On completion of the payments the appellant was to deliver to the vendee a bill of sale. The contract required the vendee to give the vendor a bond in the sum of $8,000 to secure it against any liens placed upon the tug while she was in the vendee's possession. The vendee sold the tug on August 15, 1919, to the claimant for $18,000, which was paid at some time between that date and September 3d, on which day the appellant, having been paid the balance of the purchase price by the vendee, delivered a bill of sale direct to the claimant, with covenant of warranty.

On September 8, 1921, the libelant arrested the tug for its charges, and on September 4, 1923, the claimant impleaded the appellant under the fifty-sixth rule, seeking to hold it on the warranty; the Barton Company having become insolvent on June 14, 1921. The District Court dismissed the libel in rem against the tug for laches in prosecution of the libel, but granted a decree in personam against the appellant, upon the theory that the Barton Company had acted as its agent in contracting for the repairs.

The evidence upon which the appellant's liability was thought to rest was that the libelant had sent the bills to Barton addressed to "Tug Boise Penrose and Owners"; that the appellant had stipulated for the surety bond from the Barton Company, though this had never been received; and that the Barton Company was in possession under the contract of sale, which, as such, created the relation of principal and agent between itself and its vendor.

The Meseck Company alone appealed.

Alexander & Ash and Edward Ash, all of New York City, for appellant.

Purrington & McConnell, Frank J. McConnell, and James D. Brown, all of New York City, for libelant.

Alfred H. Strickland, of New York City, for claimant.

Before MANTON, L. HAND, and AUGUSTUS N. HAND, Circuit Judges.

L. HAND, Circuit Judge (after stating the facts as above). [1] The libelant has not appealed, and, though the case comes here upon a trial de novo, it raises no question in its brief as to the dismissal of its libel in rem. We pass, therefore, the propriety of that portion of the decree, and proceed to the only question raised; i. e., the decree against the appellant in personam.

The pleadings are scarcely sufficient to raise the question. The libel was in rem for a lien under the Maritime Liens Act of 1920, and suggested no liability against the appellant. The impleading petition relied wholly on the warranty in the bill of sale from appellant to the claimant. Nowhere in the pleadings, therefore, did any party assert the cause of suit on which recovery was had. We notice the point, without deciding it, lest it should be thought that by our silence we assume the propriety of a decree on such pleadings.

[2] The theory of the libelant is that the Barton Company, as vendee in possession, was agent of the appellant, as vendor, to contract for the repairs. The question is of common-law liability, not of maritime law, and the situation is indistinguishable from that of supplies furnished, or repairs done, at the

order of a mortgagor in possession. In England the law was in some confusion on the point (Jackson v. Vernon, 1 H. Bl. 114; Westerdell v. Dale, 7 Term Rep. 306), until the case of Mitcheson v. Oliver, 5 El. & Bl. 419. In Jackson v. Vernon a mortgagee was held not liable, and Westerdell v. Dale turned upon special circumstances, the defendant still remaining part owner, though not in charge. Lord Kenyon, however, indicated obiter an opinion contrary to the result in Jackson v. Vernon. In Mitcheson v. Oliver a vendor, who kept title as security, was exonerated, unless proved to have given authority to the vendee, express or by estoppel. Although Westerdell v. Dale and Jackson v. Vernon were not discussed, we take it that this case settles the law in that country. The Troubadour, L. R. 1 Ad. & E. 202; The Great Eastern, L. R. 2 Ad. & E. 88, 90. In Tucker v. Buffington, 15 Mass. 477, the mortgagee was held, chiefly on a dictum of Lord Kenyon in Westerdell v. Dale, and on the supposed authority of Abbott. However, in Brooks v. Bondsey, 17 Pick. (Mass.) 441, 28 Am. Dec. 313, and Howard v. Odell, 1 Allen (Mass.) 85, the mortgagee was exonerated, and Tucker v. Buffington must now be considered as depending upon estoppel.

The New York law is well settled in favor of the appellant here. In McIntyre v. Scott, 8 Johns. (N. Y.) 159, and Macy v. Wheeler, 30 N. Y. 231, a mortgagee was exonerated, and in Wendover v. Hogeboom, 7 Johns. (N. Y.) 308, Leonard v. Huntington, 15 Johns. (N. Y.) 298, and Thorn v. Hicks, 7 Cow. (N. Y.) 697, the same was ruled in respect of a vendor, who had reserved title as security. Philips v. Ledley, Fed. Cas. No. 11096, involved a vendor, and Davidson v. Baldwin, 79 F. 95 (C. C. A. 6), a mortgagee. In each case the defendant succeeded. The mortgagee was assumed not to be liable in Morgan v. Shinn, 15 Wall. 105, 21 L. Ed. 87, 110, and this was the actual decision, in respect of freights fraudulently collected, in Calumet & Hecla Mining Co. v. Equitable Trust Co. (D. C. S. D. N. Y.) 275 F. 552.

To-day, so far as we can find, it is universally held that neither a mortgagee, nor a vendor reserving title, is as such liable for supplies or repairs. There must be some conduct other than the registry of title in his own name which estops him to deny that the mortgagor or vendee is his agent, or some proof of actual authority. The stipulation in the contract for a bond to secure the appellant against liens, instead of indicating any authority of the vendee to contract as agent, seems to us strong evidence of just the opposite intent. Certainly it is a strange agency in which the agent agrees to secure the principal against the consequences of acting within the scope of his authority.

None of the cases respecting liens upon vessels for such services has any bearing on the controversy, for obvious reasons.

Decree reversed; libel dismissed.