## THE JOHN E. BERWIND.

### CADRO et al. v. VREDENBURGH et al.
### No. 213.

Circuit Court of Appeals, Second Circuit.

Feb. 15, 1932.

Thomas A. McDonald, of New York City (Franklin M. Depew, of New York City, of counsel), for appellant O'Boyle.

Winifred Sullivan, of New York City, for libelants-appellees.

Before MANTON, SWAN, and AUGUSTUS N. HAND, Circuit Judges.

AUGUSTUS N. HAND, Circuit Judge.

The libelants were the crew of the steam tug John E. Berwind, and filed a libel for seamen's wages against the tug, O'Boyle, the registered owner, and Vredenburgh, alleging that the tug was operated by O'Boyle and Vredenburgh as agent of O'Boyle. Vredenburgh was not served with process. The District Court granted a decree to libelants against the tug and O'Boyle, from which O'Boyle now appeals. There is no doubt that libelants were entitled to recover against the tug, and the only question before us is whether they had enforceable claims against O'Boyle personally.

The tug at one time belonged to Vredenburgh, and was offered for sale by the United States marshal. Vredenburgh arranged with O'Boyle to pay him $100 more than the selling price if the latter would buy it in for him at the sale. O'Boyle purchased it at the sale for $655, and Vredenburgh paid him the $100, and gave a note for the purchase price. The tug was then registered by O'Boyle in his own name; the registry designating Vredenburgh as the master. O'Boyle testified that he took title solely as security, and had never given Vredenburgh a bill of sale or received the balance of the purchase money.

After the foregoing transactions Vredenburgh took the tug and operated her about the Hudson river and Barge Canal. Some of the crew were on her on one or the other of these voyages and also in New York when she was being fitted out, and late in the season before she was laid up. Vredenburgh fitted her out for her trips and hired the crew.

O'Boyle acquiesced in Vredenburgh's use of the tug on the latter's statement that he could pay for the boat in two or three months, apparently in order that profits received from operations of the tug might assist him to complete his payments.

The foregoing facts were testified to by Vredenburgh and O'Boyle. If qualified by nothing else, they would clearly indicate that there was no relation of principal and agent between O'Boyle and Vredenburgh. In such circumstances Vredenburgh would be a conditional vendee in possession of the vessel under what was the practical equivalent of a demise giving Vredenburgh the rights of an owner pro hac vice and subjecting him alone to personal liability for torts committed and contractual liabilities incurred during any maritime venture entered into while the same relations continued. Undoubtedly there was ample basis for imposing a maritime lien upon the tug for libelants' wages, but libelants were not entitled to hold O'Boyle personally unless the relation of principal and agent existed between him and Vredenburgh. The latter testified that he was operating the tug for himself and not for O'Boyle.

The two principal witnesses for libelants testified that they knew O'Boyle was the registered owner. But the libelant Leddick said that he was told by Vredenburgh when he hired him that he was the owner of the tug. The libelant Cadro likewise said that Vredenburgh told him "he did not own anything, that he wouldn't have a boat in his own name," and that Cadro accordingly "assumed that he owned her and put her in someone else's name."

A possible contradiction of the testimony that Vredenburgh was the conditional vendee of the tug may be found in the testimony of Cadro about an interview at O'Boyle's office in December, 1930, when Cadro, Leddick, O'Boyle, the latter's manager, Hickey, and Vredenburgh were present. Some one had offered Vredenburgh another "job for the Berwind and wanted to take her down to Pier 32," but the only way he could "close the deal" was to have her registered in his own name. He accordingly sought O'Boyle's per-

mission to have this done. But Hickey said he could not see how they had let Vredenburgh take the Berwind at all, and, if he "wanted the 'Berwind' he should come in and pay $500 or $600," and then he could have a clear bill of sale and could do as he pleased; "that they would not take any more responsibility for the 'Berwind'; that she already had bills against her which Mr. O'Boyle would probably have to pay." Inasmuch as the balance of the purchase price was not then forthcoming, Vredenburgh was not allowed to use the tug, and Hickey told him to take her to O'Boyle's yard at Tottenville, Staten Island, and to see that nothing was taken off her. Thither she was taken and soon after sunk.

█ It may be argued that Hickey's declarations indicated that O'Boyle never bought in the tug at the marshal's sale as agent for Vredenburgh, but merely contracted to sell her to the latter upon payment of the agreed price; in other words, that O'Boyle was not the holder of a mere security title, but was the absolute owner. Such an interpretation of Hickey's words however, disregards all the testimony of O'Boyle and Vredenburgh, and is opposed to the latter's statement to Leddick, when he hired him, that he (Vredenburgh) owned the tug, and to his similar statement to Cadro. These utterances by Vredenburgh seem to have been made under no suspicious circumstances. They tended to show that the hiring of the crew was on his own behalf and not as O'Boyle's master or agent. They were competent evidence to interpret the acts of Vredenburgh, and were properly admitted as part of the res gestæ. Travelers' Insurance Company v. Mosley, 8 Wall. 397, 19 L. Ed. 437; Mutual Life Insurance Co. v. Hillmon, 145 U. S. 285, 12 S. Ct. 909, 36 L. Ed. 706.

The statement of Hickey that the Berwind "already had bills against her which Mr. O'Boyle would probably have to pay" was of little significance. Bills incurred by Vredenburgh would be presumptive liens on the tug, and consequently would impair O'Boyle's security. O'Boyle would have to discharge them if he wished to realize on his security. Hickey's statement, at most, involved no more than the legal opinion of a dissatisfied creditor. It is quite insufficient to overthrow the testimony of Vredenburgh and O'Boyle which was nowhere directly met and bears the marks of credibility. The proof was plain that O'Boyle did not fit out the tug and did not pay Vredenburgh anything as master, never had any interest in her earnings, and did not hire the crew. Both Cadro and Led-

dick admitted that they understood that the vessel belonged to Vredenburgh.

■ It is true that the District Judge held that O'Boyle was not acting as the agent of Vredenburgh, when bidding in the tug at the marshal's sale, and that he concluded that O'Boyle became the real owner and was "therefore liable." But his conclusion was in the face of uncontradicted testimony that O'Boyle bought in the tug for Vredenburgh and that Vredenburgh not only paid $100 on account of the transaction, but gave his note for the balance due. It was likewise in the face of what seems to have been the assumption of the libelants themselves that Vredenburgh was the real owner of the vessel. In such circumstances we are impelled to differ with the findings of the trial court.

■ If, as we hold, O'Boyle had no more than a security title, he was not personally liable for contracts affecting the tug and made by his conditional vendee when in possession of the vessel. The Boise Penrose (C. C. A.) 22 F.(2d) 919; Morgan's Assignees v. Shinn, 15 Wall. 105, 21 L. Ed. 87; Macy v. Wheeler, 30 N. Y. 231. Moreover, even if O'Boyle were thought to have been the absolute owner of the tug, he was never in fact operating her. If he chose to allow Vredenburgh to have complete control of the vessel for an indeterminate time so that the latter might employ her in his own enterprises, the transaction amounted to a demise charter, terminable at will, and rendered Vredenburgh, as owner pro hac vice, the only one personally liable for obligations which he contracted. Everett v. United States (C. C. A.) 284 F. 203; Cox v. Lykes Brothers, 237 N. Y. 376, 143 N. E. 226. See, also, Leary v. United States, 14 Wall. 607, 20 L. Ed. 756. Vredenburgh was the owner within the meaning of Rev. St. § 4525 (46 USCA § 592).

The decree is reversed, and the cause remanded, with directions to dismiss the libel as against the respondent Anthony O'Boyle.