Walter W. SIMS

v.

MARINE CATERING SERVICE, INC.

v.

The CALIFORNIA COMPANY.

No. 5458.

May 14, 1963.

United States District Court
D. Louisiana.

Jack C. Benjamin, (Kierr & Gainsburgh, New Orleans, La.,) for plaintiff.

Leon D. Hubert, Jr., (Hubert & Baldwin, New Orleans, La.,) for respondent.

Robert B. Acomb, Jr., (Jones, Walker, Waechter, Poitevent, Cartere & Denegre, New Orleans, La.,) for respondent-impleaded.

FRANK B. ELLIS, District Judge.

Faced with the mandate of The Osceola, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, "That the vessel and her owners are liable, in case a seaman falls sick, or is wounded, in the service of the ship, to the extent of his maintenance and cure, and to his wages, at least so long as the voyage is continued", Id. at page 175, 23 S.Ct. at page 487, this Court is faced with a problem peculiar to Louisiana's offshore oil development activity and must assess liability for maintenance and cure benefits upon either the shipowner (respondent-impleaded) or upon the employer (respondent). The following facts give rise to this litigation.

Respondent-impleaded, California Company, hereafter referred to as California, contracted with Loffland Brothers Company, hereafter referred to as Loffland, to develop mineral resources beneath a lease to surface rights owned by California some fourteen miles southwest of Grande Isle, Louisiana, in the Gulf of Mexico. California was to provide the vessel M/V S 22, Coast Guard Registration # 268772, to be used as a quarterboat for employees of organizations connected with the oil development activity. Loffland contracted with Marine Catering, to perform "household duties" aboard the M/V S22. At the bottom of this chain of command was the libellant, Walter W. Sims, Z 1116278, employed by Marine Catering as a messman aboard the M/V S 22.

Libellant first went aboard the M/V S 22 on May 11, 1961, and was injured, as admitted by respondent, on May 23, 1962. On May 29, 1962, he was given a master's certificate of service and forthwith reported to Doctor G. M. Perry of Galliano, Louisiana, which physician referred libellant, a resident of Osyka, Mississippi, to Dr. W. A. Hiatt and Beacham Memorial Hospital in Magnolia, Mississippi, located about ten miles from Osyka.

On July 3, 1962, libellant was referred to Dr. Walter H. Brent of New Orleans, La. The diagnosis by Dr. Brent was a "mild compression fracture of T–8 vertebrae." On July 26, 1962, libellant was referred to Dr. G. Gernon Brown of New Orleans by a Mr. W. Bigner, an adjuster for Marine Catering's Insurer, Great American Insurance Company, his diagnosis reflecting "evidence of a fracture on the 9th dorsal vertebrae."

During the interim respondent's insurer paid libellant the sum of $35.00[1] per week under the provisions of the Louisiana Workmen's Compensation Act, these payments being terminated on July 28, 1962. On August 9, 1962, libellant's attorney received the following communication from respondent's insurer:

"In view of the fact that you have elected to proceed in behalf of the claimant under the Jones Act, we will continue to pay Mr. Walter W. Sims $35.00 per week through your office during his disability. The determination of the remedy under which such payments are made is a question of fact. We do not agree necessarily that the Jones Act or the Maritime Law are involved."

On September 14, 1962, libellant was notified by the Beacham Memorial Hospital that Marine Catering "says they are not responsible for this claim any longer" and tendered their invoice in the amount of $144.85.

A series of demand letters to the respondent and its insurer resulted in a negative response and on October 11, 1962, libellant instituted this action against his employer seeking maintenance and cure. Respondent filed a 56th

1. The statutory weekly compensation benefits under the Louisiana Workmen's Compensation Statute, LSA–Revised Statutes, Title 23, Section 1202.

Rule petition against California alleging that "California was the owner of the vessel involved and the fact that its own employees were navigating the vessel and the fact that Sims, libellant herein, was performing duties directly related to the navigation of the M/V S 22, brought about a situation which, under the Admiralty Rules concerning liability for maintenance and cure, made California responsible to libellant Sims for such maintenance and cure."

This controversy is brought to the Court's immediate attention by virtue of libellant's motion for summary judgment under the 58th Admiralty Rule [2] asserting that "there is no genuine issue as to any material fact relevant to libellant's uncontradicted right to receive accrued and current maintenance from respondent herein." Respondent moved for summary judgment against respondent-impleaded on grounds that respondent-impleaded is responsible for maintenance and cure.

There is adequate proof of material fact in the record for this court to make a determination as to libellant's status and the rights flowing to him from that status. Any further proof would be redundant.

■ The first question of material fact is whether or not the M/V S 22 was a vessel. The Court holds as a matter of fact that an 1800 horsepower "oil screw", 311.7 feet long, with a 50-foot beam and a 21.6 foot draft, of 3144 gross tons and 2609 net tons, is, in fact, a vessel.[3]

One of the most lucid and forward-looking dissertations on the question of vessel *vel non* is this brief passage from Saylor v. Taylor, 4 Cir. 1896, 77 F. 476.

"At first blush it would seem a stretch of the rule to hold a dredge and her accompanying scows to belong in the same class with ocean steamships. The idea of commerce does not come into the mind primarily in connection with such craft; but, when it is borne in mind that they are constructed to move upon the water, and nowhere else, and that, while thus moving upon the water, they are subject to all the rules that govern other water craft as to lights, collisions, etc., it will be seen that they have that mobility and capacity to navigate which are recognized as the prime elements in determining the subjects of maritime liens [for seamen's wages]. And so it seems a stretch of the imagination to class the deckhands of a mud dredge in the quiet waters of a Potomac creek with the bold and skillful mariners who breast the angry waves of the Atlantic; but such and so far-reaching are the principles which underlie the jurisdiction of the courts of admiralty that they adapt themselves to all the new kinds of property and new sets of operatives and new conditions which are brought into existence in the progress of the world." Id. at pages 478, 479.

---

2. Admiralty Rule 58, 28 U.S.C.

3. "The word 'vessel' includes every description of watercraft or other artificial contrivance used, or capable of being used, as a means of transportation on water." 1 U.S.C. § 3. "It is true that the terms 'ships' and 'vessels' are used in a very broad sense, to include all navigable structures intended for transportation," Cope v. Vallette Dry Dock Company, 119 U.S. 625, 629, 7 S.Ct. 336, 337, 30 L.Ed. 501, as evidenced by the following nonexclusive list of "special purpose structures" Offshore Company v. Robison, 5 Cir. 1959, 266 F.2d 769, 776, 75 A.L.R.

2d 1296, which have been held to be vessels: a large dredging barge without motive power, City of Los Angeles v. United Dredging Company, 9 Cir. 1926, 14 F.2d 364, Kibadeaux v. Standard Dredging Company, 5 Cir. 1936, 81 F.2d 670; a craft on which cargo was stored during the winter after closing of navigation, In re Great Lakes Transit Corporation, 6 Cir. 1933, 63 F.2d 849; scows, Ellis v. United States, 1907, 206 U.S. 246, 27 S. Ct. 600, 51 L.Ed. 1047; pile drivers and steam dredges, George Leary Construction Company v. Matson, 4 Cir. 1921, 272 F. 461; and racing yachts, United States v. Holmes, 6 Cir. 1900, 104 F. 884.

The next question of material fact is whether, or not libellant was a member of the crew of that vessel. The record indicates that libellant began his tour of duty as a messman in the Steward's Department on May 11, 1961, as per the Master's Certificate, and left the service of the vessel after the injury. The purpose of the motorvessel was to be used as a "quarterboat" and libellant's duties as a messman "contributed to the function of the vessel or to the accomplishment of its mission." Offshore Company v. Robison, 5 Cir. 1959, 266 F. 2d 769, 779. The Court finds as a matter of fact that he was a member of the crew of the M/V S 22 and, until his injury, permanently attached thereto.[4]

The next question of material fact is whether or not libellant sustained his injuries in the service of the ship. This quaere is answered in the affirmative when considered in the light of the Master's Certificate, first reports of accident, medical reports and respondent's admission that "libellant suffered an injury on May 23, 1962" when "employed by respondent * * * and assigned by respondent to the Steward's Department on the M/V S 22."

Thus the issues resolve themselves into questions of law, not fact, and properly subject to summary adjudication.

The Court is of the opinion that libellant is entitled to accrued maintenance, cure, damages for failure to pay maintenance and cure and attorney's fees. We come now to the all-important question of from whom is such due and owing?

Respondent Marine Catering urges the mandate and/or admonition of The Osceola, supra, upon us asserting that the shipowner, respondent-impleaded California, is primarily responsible for maintenance and cure. Respondent-impleaded California alleges that since there was no employment between it and libellant, there is no relationship between the parties upon which the Court can impose an obligation to pay maintenance and cure. The logic of respondent and that of respondent-impleaded would compel a finding that libellant was owed maintenance and cure.

Throughout the centuries the laws of the various nations from the Middle Ages to the present time have consistently stressed that the seaman was entitled to the remedy of maintenance and cure when sick or injured "while in the service of the ship," [5] and that the obligation to be cured at the ship's expense was co-extensive with the service of the ship.[6]

The matter was finally laid to rest in 1902 in The Osceola, supra, holding that the ship and her owners are liable for maintenance and cure. However, in the sixty-one years since The Osceola the Court has stressed the employment aspect and the duty of paying maintenance and cure as incidental to the employer-employee relationship, as illustrated below.

"The duty to make such provision [for maintenance and cure] is imposed by the law itself as one annexed to the employment." Cortes v. Baltimore Insular Line, 1932, 287 U.S. 367, 371, 53 S.Ct. 173, 174, 77 L.Ed. 368. "The duty, which arises from the contract of employment, * * * does not rest upon negligence or culpability on the part of the owner

---

4. "Hence it is that in all times and in all countries those who are employed upon a vessel in any capacity, however humble, and whose labor contributes in any degree, however slight to the accomplishment of the main object in which the vessel is engaged, are clothed by the law with the legal rights of mariners, 'no matter what may be their sex, character, station, or profession.' Ben.Adm. § 241." Saylor v. Taylor, supra, 77 F. at page 479. "The word 'crew' does not have an absolutely unvarying legal significance," South Chicago Company Coal & Dock Company v. Bassett, 1939, 309 U.S. 251, 258, 60 S.Ct. 544, 548, 84 L.Ed. 732.

5. The Laws of Oleron, Arts. VI, VII; The Laws of Wisbuy, Art. XVIII; The Laws of the Hanse Towns, Art. XXXIX; The Marine Ordinances of Louis XIV, Book Fourth, Art. XI; The Bouker No. 2, 2 Cir. 1917, 241 F. 831. Reed v. Canfield, 1832, Fed.Cas.No.11641.

6. Reed v. Canfield, supra.

or master, * * * nor is it restricted to those cases where the seaman's employment is the cause of the injury." Calmer S. S. Corp. v. Taylor, 1937, 303 U.S. 525, 527, 58 S.Ct. 651, 652, 82 L.Ed. 993. "In its origin, maintenance and cure must be taken as an incident to the status of the seaman in the employment of his ship." O'Donnell v. Great Lakes Dredge & Dock Company, 1942, 318 U.S. 36, 42, 63 S.Ct. 488, 491, 87 L.Ed. 596. "In the United States this obligation has been recognized consistently as an implied provision in contracts of marine employment. Created thus with the contract of employment, the liability, * * * in no sense is predicated on the fault or negligence of the shipowner. Whether by traditional standards he is or is not responsible for the injury or sickness, he is liable for the expense of curing it as an incident to the marine employer-employee relationship." Aguilar v. Standard Oil Company, 1942, 318 U.S. 724, 730, 63 S.Ct. 930, 933, 87 L.Ed. 1107.

This brings us, chronologically, to Fink v. Shephard S. S. Company, 1948, 337 U.S. 810, 69 S.Ct. 1330, 93 L.Ed. 1709. This case was a consolidation of Number 360, Fink v. Shephard S. S. Company, supra, and Number 420, Gaynor v. Agwilines, Inc., 337 U.S. 810, 69 S.Ct. 1330, 93 L.Ed. 1709, in the October Term of 1948. Number 430, Gaynor v. Agwilines, Inc., is of particular interest in the present controversy and determinative of the outcome.

Gaynor signed on aboard the S/S Christopher Gadsden in 1945, after the Clarification Act of 1943 [7]. The vessel was owned by the United States, operated by the War Shipping Administration and managed by Agwilines, Inc., as agent. Gaynor went ashore when the vessel was in Charleston, S. C., and was in-

jured. He instituted an action against Agwilines, Inc., for wages and maintenance and cure. The District Court dismissed, 76 F.Supp. 617, the Court of Appeals for the Third Circuit affirmed, 169 F.2d 612, and the Supreme Court affirmed.

Mr. Justice Reed preceded the delivery of the majority opinion of the court with this brief preamble: "These two cases [Fink and Gaynor] raise issues which, as the facts set out below indicate, are controlled by our decision in Cosmopolitan Shipping Co. v. McAllister, ante, [337 U.S.] p. 783, [69 S.Ct. 1317, 93 L.Ed. 1692, decided this day," Id. 337 U.S. at page 811, 69 S.Ct. at page 1331], and used the following language in determining liability for maintenance and cure:

"Although this case involves the right to wages and maintenance and cure, whereas McAllister and Fink concern damages for negligent injury, the reasoning and decisions in those cases are dispositive here. This is so because the right to maintenance and cure is 'annexed to the employment,' Cortes v. Baltimore Insular Line, 287 U.S. 367, 371 [53 S.Ct. 173, 77 L.Ed. 368]; see The Osceola, 189 U.S. 158 [23 S.Ct. 483, 47 L.Ed. 760]; is 'an incident of the marine employer-employee relationship,' Aguilar v. Standard Oil Co., 318 U.S. 724, 730 [63 S.Ct. 930, 87 L.Ed. 1107]; 1 Benedict, Admiralty (Sixth edition 1940) 61, 253; and because only the owner or the owner pro hac vice of a vessel is liable for wages, which also stem from the contract of employment. Shilman v. United States [2 Cir.], 164 F.2d, 649,; The John E. Berwind [2 Cir.], 56 F.2d 13; Everett v. United States [9 Cir.], 284 F.

7. 50 U.S.C.Appendix § 1291. This act extended the remedies available to seamen on private owned American vessels to seamen employed on United States vessels "as employees of the United States through the War Shipping Administration." It thus gave effect to a congressional purpose to treat seamen employed through the War Shipping Administration as "merchant seamen" and not as "public vessel seamen" Cosmopolitan Shipping Company v. McAllister, 337 U.S. 783, 792, 69 S.Ct. 1317, 93 L.Ed. 1692; Johansen v. United States, 343 U.S. 427, 434, 72 S.Ct. 849, 96 L.Ed. 1051.

203; Cox v. Lykes Brothers, 237 N.Y. 376, 383, 143 N.E. 226, 228–229. *Thus liability for wages and maintenance and cure depends upon the same relationship that is required to support an action for negligent injury.*" Id. 337 U.S. at page 815, 69 S.Ct. at page 1333. (Italics supplied)

Thus it appears that the "vessel and her owners" rule of The Osceola is not exclusive in that only the owner may be held liable for maintenance and cure, regardless of by whom the seaman is employed. That case dealt with the traditional, historic relationship of shipowner-seaman. Subsequent developments led the Courts to hold persons other than the owner liable for wages [8], stressing the marine employer-employee relationship which led, perforce, to emphasizing employer liability for maintenance and cure.[9]

The last exposition into the problem of liability for maintenance and cure was the directive in Fink v. Shephard Steamship Company, supra, that the "relation-ship that is required to support an action for negligent injury"[10] is determinative of liability for wages and maintenance and cure. The Court must therefore explore that relationship which is required to support an action for negligent injury.

■  Operating under the mandate of The Osceola, supra, admiralty courts were powerless to grant a seaman a cause of action for negligence, absent unseaworthiness under the maritime law.[11] The Merchant Marine Act of 1920 [12], commonly known as the Jones Act, filled this void with a remedy at law for damages with a right to trial by jury. It was "welfare legislation [creating] new rights in seamen for damages arising from maritime torts."[13] Its literal language and that of the Federal Employers Liability Act [14] incorporated into it [15] all indicate that the Jones Act is a negligence statute and that damages may be recovered only for negligence.[16]

■■  The express terms of the Act [17] and the recent cases interpreting same [18]

8. See Everett v. United States, 9 Cir. 1922, 284 F. 203; The John Berwind, 2 Cir. 1932, 56 F.2d 13; and Shilman v. United States, 2 Cir. 1947, 164 F.2d 649, all cited with approval, Fink v. Shephard Steamship Company, supra, 337 U.S. at page 815, 69 S.Ct. at page 1333.

9. It should be noted that the courts have historically referred to the rights to "wages and maintenance and cure" as a package benefit for seamen. It has never been contemplated that the benefits are severable, wages due and owing from one person and maintenance and cure from another.

10. Fink v. Shephard Steamship Company, supra, 337 U.S. at page 815, 69 S.Ct. at page 1333.

11. "3. That all the members of the crew, except perhaps the master, are, as between themselves, fellow servants, and hence seamen cannot recover for injuries sustained through the negligence of another member of the crew beyond the expense of their maintenance and cure.
"4. That the seaman is not allowed to recover an indemnity for the negligence of the master, or any member of the crew, but is entitled to maintenance and cure, whether the injuries were received by negligence or accident." The Osceola, supra, 189 U.S. at page 175, 23 S.Ct. at page 487.

12. 46 U.S.C. § 688.

13. Cosmopolitan Shipping Company v. McAllister, supra, 337 U.S. at page 790, 69 S.Ct. at page 1321.

14. 46 U.S.C. § 51 et seq.

15. 45 U.S.C. § 51. "Every common carrier by railroad * * * shall be liable in damages to any person suffering injury while he is employed by such carrier * * * for such injury * * * resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, * * *."

16. DeZon v. American President Lines, 1943, 318 U.S. 660, 671, 63 S.Ct. 814, 87 L.Ed. 1065; Jamison v. Encarnacion, 1929, 281 U.S. 635, 639, 50 S.Ct. 440, 74 L.Ed. 1082.

17. The grant of jurisdiction to federal district courts incorporated into the act indicate that the person, firm or corporation responsive to the complaint is the

18. See note 18 on page 517.

are indicative that the employer-employee relationship only will support an action for negligent injury and that rule is dispositive of the question of liability for wages and maintenance and cure [19], i. e. the relation requisite to liability for maintenance and cure is the employer-employee relationship.

■■ Consequently the Court has no alternative but to grant libellant's motion for summary judgment and hold respondent Marine Catering Service, Inc., the employer, liable for maintenance at the rate of $8.00 per day, calculated from the date libellant left the service of the vessel, and cure, both payable until such time as libellant will reach "maximum cure", Farrell v. United States, 336 U.S. 511, 69 S.Ct. 707, 93 L.Ed. 850, respondent to be given credit for payments made under the State Workmen's Compensation Act. The Court holds that acceptance of the State Workmen's Compensation benefits by libellant has in no way prejudiced his rights to claim maintenance and cure in this Court. The Constitutional grant of admiralty jurisdiction to this Court [20] exists, among other reasons, for the protection of seamen "who are its wards" [21], and the acceptance of a landman's remedy cannot prejudice a seaman's subsequent demand for a greater right, a more ancient right and the most sacred right ever afforded men of labor.

We come now to the element of damages.

■ It is an uncontroverted fact that the libellant was a 53-year old male whose only source of income was his earnings; that since his maintenance payments were discontinued he has had to borrow money from family and friends and has drawn upon his savings to support himself and his family. The fact that libellant could have drawn $35.00 per week under the State Workmen's Compensation Act, and did not do so, even though it would not have prejudiced his claim for maintenance and cure in the slightest, will only serve as a mitigation of damages, which the Court assesses at $300.00, The Iroquois, 194 U.S. 240, 24 S.Ct. 640, 48 L.Ed. 955; Cortes v. Baltimore Insular Line, supra; Vaughn v. Atkinson, 369 U.S. 527, 82 S.Ct. 997, 8 L.Ed. 2d 88. At this juncture it may be well to point out that no reasonable excuse has been presented for ceasing payment of libellant's medical expenses, a statutory obligation under the State Workmen's Compensation Act and implied in the maritime contract of employment under the general maritime law.

The Court will also assess attorney's fees in the amount of $200.00, Vaughn v. Atkinson, supra.

There being no just cause of delay in the entry of a final judgment, as to respondent Marine Catering Service, Inc., the Court will order that judgment be entered in favor of Walter W. Sims, against Marine Catering Service, Inc., as outlined above.

The motion by respondent against respondent-impleaded will be denied.

Decree accordingly.

**18.** "Yet this Court may not disregard the plain and rational meaning of employment and employer to furnish a seaman a cause of action against one completely outside the broadest lines or definitions of employment or employer. We have no doubt that, under the Jones Act, only one person, firm, or corporation can be sued as employer." Cosmopolitan Shipping Company v. McAllister, supra, 337 U.S. at page 791, 69 S.Ct. at page 1321.

employer. "Jurisdiction in such actions shall be under the court of the district in which the defendant employer resides * * *." 46 U.S.C. § 688.

**19.** Also see Gilmore & Black, The Law of Admiralty, Chapter VI, Sect. 6-7, Page 256, "Since the right [to maintenance and cure] arises out of the employment relationship the employer is the person liable."

**20.** U.S.Constitution, Article III, Section 2; 28 U.S.C. § 1333.

**21.** Robertson v. Baldwin, 1896, 165 U.S. 275, 17 S.Ct. 326, 41 L.Ed. 715. "The ancient characterization of seamen as 'wards of admiralty' is even more accurate now than it was formerly." Id. at page 287, 17 S.Ct. at page 331.