**Cleveland CRYER**

v.

**PRESTRESSED CONCRETE PRODUCTS CO., INC., et al.**

**Civ. A. No. 73-1773.**

United States District Court,
E. D. Louisiana.

April 4, 1974.

---

Carl J. Barbier, Badeaux, Discon & Cumberland, for plaintiff.

Gerard M. Dillon, Dillon & Williams, for T. L. James & Co., Inc., Atlas Construction Company, Inc. and Highlands Insurance Company.

W. K. Christovich, Christovich & Kearney, for Prestressed Concrete Products Co., Inc. and Highlands Insurance Company.

## MEMORANDUM OPINION AND ORDER

BOYLE, District Judge:

This action, brought under the Jones Act (46 U.S.C. § 688) and under the General Maritime Law, arises from bodily injuries sustained by the plaintiff on January 16, 1973 aboard a barge moored to the bank of the Mississippi River near Nairn, Louisiana.

Plaintiff was the operator of a dragline located aboard the barge and was injured while greasing the gears of the dragline when the gear box lid fell and hit plaintiff's arm, knocking his hand into the moving gears, and causing amputation of plaintiff's arm. The defendants are Prestressed Concrete Products Co., Inc. (Prestressed), Highlands Insurance Company (Highlands), T. L. James & Co., Inc. (James), Atlas Construction Co., Inc. (Atlas), L & M Towing Company (L&M) and Harvey Kling (Kling). James, Atlas and their insurer, Highlands, and Prestressed and their insurer, also Highlands, have moved for summary judgment on the Jones Act claim on the ground that neither James nor Atlas nor Prestressed employed the plaintiff, as well as for summary judgment on the claims made under the General Maritime Law on the ground that neither James nor Atlas nor Prestressed owned, chartered, supervised or had operational control over the barge on which the plaintiff worked, nor were they guilty of any negligence which caused the plaintiff's injury.

Plaintiff operated a dragline situated on a barge in the Mississippi River.

The dragline was owned by Harvey Kling and Rene Martin. The barge was owned by Thomas Jordan who chartered it to L & N Towing Company.[1] The barges that plaintiff had been unloading sand and gravel from on the day of his accident were owned by Prestressed and were moved about by a tug belonging to Prestressed. The plaintiff dumped the sand and gravel he unloaded into a hopper located ashore which was owned by L & N Towing Company. Trucks owned by Marvin Buras, who was hired by Atlas and James to haul the sand and gravel from the delivery point to a stockpile about a mile away, were loaded at the hopper. The hopper was operated by an employee of Atlas or James (who were one and the same for all practical purposes, Atlas being wholly owned by James) who was in charge of filling the trucks with a specified load of materials supplied by Prestressed only.

L&N and Prestressed were selling sand and gravel to Atlas and James. The sand and gravel was brought down the Mississippi by means of L&N and Prestressed barges to the landing site. L&N had contracted to deliver the materials to the stockpile which it did under an arrangement with Buras, while Prestressed delivered at the hopper. In order to get the materials unloaded from the barges, Prestressed and L&N had contracted with Kling to remove the materials from barges by means of a dragline mounted on a spud barge. For his services, Kling was paid $0.25 per yard by L&N and $0.30 by Prestressed. Kling charged Prestressed the extra $0.05 per yard as rent for the spud barge and the hopper, both of which were provided by L&N. Neither Atlas nor James had a contract with Kling nor did they pay Kling anything for unloading the barges, nor did they have any equipment at the unloading site.

■■ There is no evidence that at the time of his injury plaintiff was employed by either James or Atlas. Nor does it appear that James or Atlas had any control over the plaintiff prior to or at the time of his accident. The undisputed facts establish that Kling hired plaintiff to operate the dragline (Plaintiff's Dep. p. 54), Kling paid him (Kling Dep. p. 27, Plaintiff's Dep. p. 54) and had the right to fire him (Kling Dep. p. 28). At the time of the accident the operation of unloading barges had ceased for the day, and only the plaintiff and Kling were in the area of the landing site when the accident happened. We therefore find that at the time of plaintiff's accident there was no employer-employee relationship between plaintiff and Atlas or James and that plaintiff was performing services for his employer, Kling. We find that neither James nor Atlas was the Jones Act employer of plaintiff. Neither can be liable to plaintiff under the Act. See 46 U.S.C. § 688, Cosmopolitan Shipping Company v. McCallister, 337 U.S. 783, 69 S.Ct. 1317, 93 L.Ed. 1692 (1949); Pennington v. Pacific Coast Transport Company, 419 F.2d 122, 124 (5 Cir. 1969); Sims v. Marine Catering Service, 217 F.Supp. 511, 516 (E.D.La.1963).

■■ It is also evident from the undisputed facts that neither James nor Atlas owned, chartered, or had operational control over the barge whereon plaintiff's accident happened. Therefore, the plaintiff's claim based on unseaworthiness against James, Atlas and Highlands must be dismissed. The Osceola, 189 U. S. 158, 23 S.Ct. 483, 47 L.Ed. 760 (1903); Seas Shipping v. Sieracki, 328 U.S. 85, 66 S.Ct. 872, 90 L.Ed. 1099, 1946 A.M.C. 698 (1946). Plaintiff's claim for wages, maintenance and cure against James and Atlas also fall in view of our aforesaid findings. Sims, supra.

We now turn to the plaintiff's remaining claim against Atlas, James and

---

1. Although sued as L & M Towing Company, it appears from the depositions of Howard Goodger (p. 11) and Bruce Perdue (p. 14) that the proper name of the company is L & N Towing Company.

Highlands for negligence under the General Maritime Law.

■ Atlas and James were vendees of sand delivered into the hopper by Prestressed and L&N. They owned no equipment at the site, but they did provide an employee to operate the hopper when Prestressed materials were being loaded into trucks, to keep records and see that the trucks were loaded correctly. Ed Roberson, the Atlas road construction foreman, visited the landing site several times each day and Bruce Perdue, Project Manager for Atlas, usually visited the job site three times per week. There is no evidence that any Atlas or James employee, Roberson and Perdue included, supervised the barge unloading operations. As vendees of the sand and gravel, their concern was not how the materials got into the hopper, but only that the materials did get into the hopper.[2] In fact, the plaintiff stated that no one told him how to unload the materials or operate the dragline; the only thing he was told by James and Atlas was when to stop and start. Unloading of materials could not commence until state inspectors obtained test samples. Roberson would assist the inspectors in obtaining the samples and Kling or Cryer would be advised when the unloading could proceed. Beginning and stopping the loading operation was also governed by the availability of the trucks at the hopper to receive the materials. The hopper man on occasion helped plaintiff move the barges into position to unload, but it appears that this was done in a spirit of cooperation to keep the pace of the job moving and not because Atlas or James had any obligation to assist in moving barges nor did they have control over the barges or how they would be moved.

The record shows no basis for a duty owed by Atlas and James to maintain the dragline. There is evidence that on one occasion the vendees' welder made a minor repair on the clam bucket and that vendees' mechanics would be made available to make mechanical repairs if ever needed on the dragline (no specific instance of this having been done, however, appears in the evidence). There is no evidence that vendees' employees ever attempted to repair or did repair the gear box lid or the catch that held open the lid which caused plaintiff's injury. The evidence supports the conclusion that any assistance provided by vendees' employees was provided in a spirit of cooperation among the parties to facilitate and expedite receipt by the vendees of the materials and not because Atlas and James had any duty to provide such assistance.

In light of the fact that Atlas and James had no duty to maintain the dragline and the total absence from the record of facts showing that the acts of Atlas and James were in any way connected with plaintiff's injury, the plaintiff's claim against Atlas, James and their insurer, Highlands, based upon negligence under the General Maritime Law must also fall.

The motion for summary judgment dismissing plaintiff's claim against Atlas Construction Company, Inc., T. L. James & Co., Inc. and Highlands Insurance Company should be, and the same is hereby, granted.

We now turn to the motion of Prestressed and their insurer, who, by coincidence, is also Highlands Insurance Company.

■ In view of our previous conclusion that plaintiff was an employee of

---

2. Plaintiff was employed by Kling to operate the dragline to unload the L&N and Prestressed barges. L&N and Prestressed had the duty as vendors of the sand and gravel to place it in the hopper on the bank of the Mississippi. To meet this obligation, L&N and Prestressed contracted with Kling to unload the materials and place them in the hopper. Kling was paid by L&N and Prestressed and out of the money he received he paid the plaintiff. Kling had no contract with Atlas or James nor did he receive any payment from them for the services he performed for L&N and Prestressed.

Harvey Kling and the absence of facts showing that plaintiff was the borrowed servant of Prestressed,[3] the plaintiff's claim against Prestressed under the Jones Act, and under the General Maritime Law for wages, maintenance and cure must be dismissed (see citations, supra, at page 974). Prestressed was present at the landing site to deliver barges for unloading. The facts that Prestressed designated work for the plaintiff to perform, in the absence of plaintiff's employer Kling, and moved barges into position so that plaintiff could unload them are insufficient to show that plaintiff was the employee of anyone other than Kling.

■ Plaintiff's claim against Prestressed based upon the unseaworthiness of the work barge, we conclude, must also be dismissed. In order for Prestressed to owe the duty of providing a seaworthy vessel to the plaintiff, it must appear that Prestressed is owner of the vessel or have an operational interest to such an extent that the law considers it to be owner "pro hoc vice". Reed v. Yaka, 373 U.S. 410, 83 S.Ct. 1349, 10 L. Ed.2d 448 (1963); Seas Shipping v. Sieracki, supra; Waterman Steamship Corp. v. Dugan & McNamara, Inc., 364 U.S. 421, 81 S.Ct. 200, 5 L.Ed.2d 169 (1960); Cannella v. Lykes Bros. S.S. Co., 174 F.2d 794 (2 Cir. 1949); Vitozi v. Balboa Shipping Co., 163 F.2d 286 (1 Cir. 1947); Watson v. Gulf Stevedore Corporation, 374 F.2d 946 (5 Cir. 1967). We have previously noted that the barge was owned by Thomas Jordan and char-

tered to L&N. The facts that Prestressed paid $0.05 extra per yard of sand to Kling who, in turn, credited L&N for use of the work barge and hopper; that the work barge of L&N and the materials barge were sometimes moved a few feet together do not lead us to conclude that Prestressed did in fact have such operational control so as to be considered owner "pro hoc vice". *See* Aivd v. Weyerhaeuser S.S. Co., 169 F.2d 606 (3 Cir. 1948).

■ We not turn to plaintiff's remaining claim against Prestressed, which is for negligence under the General Maritime Law. It appears from the undisputed facts that Kling was engaged by Prestressed to unload sand and gravel. Prestressed delivered its barges to the landing site and a Prestressed tug moved them into position when Atlas and James designated which type of material (sand or gravel) to unload. The plaintiff operated the dragline and as we previously noted, and as plaintiff stated, no one told him how to operate the dragline. There is no factual basis for the conclusion that Prestressed owed Kling or Cryer the duty to maintain the dragline nor are there any facts which show that Prestressed performed any maintenance on the lid or catch which fell on plaintiff's arm. There is no proof that Prestressed was in any way negligent or that any act of Prestressed caused plaintiff's injury. In light of the foregoing facts and conclusions, the claim of plaintiff for neg-

---

3. A step-by-step analysis, based on factors suggested in Ruiz v. Shell Oil Company, 413 F.2d 310 (5 Cir. 1969) for determination of whether one is a borrowed employee, yields the following relevant conclusions:

1. There is no evidence of any agreement between Prestressed and Kling regarding the borrowing or lending of plaintiff.

2. There was no agreement or acquiescence by Cryer that he be employed by Prestressed.

3. There is no evidence of temporary termination by Kling of his relationship with plaintiff; in fact, at the time of the accident Kling was present and cognizant that

plaintiff was "doping the gears" and no one from Prestressed was present.

4. Prestressed did not furnish the necessary instruments or the place of performance of the work in question.

5. The work being performed was work that Kling had contracted to perform and there is no evidence that plaintiff was ever employed as a servant of Prestressed.

6. Finally, there is no evidence that Prestressed had the right to discharge plaintiff or that Prestressed had the obligation for payment of plaintiff's wages.

ligence under the General Maritime Law should also be dismissed.

The motion for summary judgment dismissing plaintiff's claims against Prestressed Concrete Products Co., Inc., and its insurer, Highlands Insurance Company, should be, and the same is hereby, granted.